**Jerry W. BOGGESS and Melissa L. WILLIAMS, Plaintiffs,**

v.

**LEWIS RAINES MOTORS, INC., a corporation, and Bank of Raleigh, N.A., Defendants.**

**No. CIV.A. 2:97–1165.**

United States District Court, S.D. West Virginia, Charleston Division.

Oct. 15, 1998.

James T. Sugarman, Mountain State Justice, Inc., Charleston, WV, for Plaintiff.

William Henry File, Jr. File, Payne, Scherer & File, Beckley, WV, for Defendant.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant Bank of Raleigh ("the Bank's") motion to dismiss for lack of subject matter jurisdiction. Briefing is complete and the matter is ripe for decision. For reasons discussed below, the Court **DENIES** the motion.

### I. FACTUAL BACKGROUND

On February 4, 1997 Plaintiffs purchased a 1989 Ford Taurus from Defendant Lewis Raines Motors, Inc. ("Motors") for $3,575.00. Plaintiffs paid $600.00 down in cash and gave a note to Motors to be added to the down payment credit, for a total down payment of $700.00. The contract for the remaining $2,875.00 was assigned to the Bank immediately. Plfs.' Resp. to Def.'s Mot. To Dismiss, Ex. A. Motors listed the mileage of the car as 48,208 on the odometer disclosure statement and on the sales agreement; however, on the assignment of certificate of title, Motors listed the mileage as 148,208. Beginning approximately three weeks after Plaintiffs purchased the car, they experienced breakdowns and numerous mechanical problems. Motors refused to make repairs. Plaintiffs spent $2,300.00 repairing the car. On September 15, 1997 the car broke down on the West Virginia Turnpike and State police towed the car to a tow yard. Without notice to the Plaintiffs, Defendants [1] took the car from the tow yard. Defendants then sent Plaintiffs notice that Plaintiffs now owed Defendants

$2,399.52 and that a private sale of the car would occur on October 4, 1997, after which Plaintiffs would be accountable for any deficiency.

Plaintiffs seek actual and statutory damages, attorney fees and costs of the action for violation of the Federal Odometer Act ("Odometer Act"), 49 U.S.C. § 32701 *et. seq.* Additionally, Plaintiffs allege violations of the West Virginia Consumer Credit and Protection Act, *W. Va.Code* § 46A–6–101, *et. seq.,* breach of warranty, damages for fraud, conversion, and violations of other state law. Federal question jurisdiction is premised on violations of the Odometer Act, pursuant to 28 U.S.C. § 1331, with the state claims falling under the Court's supplemental jurisdiction, 28 U.S.C. § 1367.

### II. DISCUSSION

#### A. Conspiracy

■ The Bank argues that Plaintiffs' allegations of Odometer Act violations do not apply to it, but only to Motors, and thus, the Court does not have subject matter jurisdiction of the claims against the Bank.[2] Accordingly, the Bank moves that the case against it be dismissed with prejudice.

The pertinent portions of the Odometer Act provide:

A person may not–

(1) advertise for sale, sell, use, install, or have installed, a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer;

(2) disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer;

(3) with intent to defraud, operate a motor vehicle on a street, road, or highway if the person knows that the odometer of the

---

1. The Court cannot determine from the complaint or pleadings to date which Defendant or Defendants towed the car, sent the notice, and sold the car.

2. All parties to the lawsuit are residents of West Virginia, so diversity jurisdiction is not at issue here.

vehicle is disconnected or not operating; or

(4) conspire to violate this section or section 32704 or 32705 of this title.[3]

49 U.S.C. § 32703. Section 32705 deals with disclosure requirements on transfer of motor vehicles, requiring:

(a)(1) ... a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure:

(A) Disclosure of the cumulative mileage registered on the odometer.

(B) Disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled.

(2) A person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the disclosure required by such a regulation.

49 U.S.C. § 32705.

The Bank argues that it is neither a person doing any of the odometer-related acts violative of section 32703 nor a transferor of a motor vehicle so as to bring it under section 32705. According to the Bank, the only possible violation that could be alleged against it would be conspiracy to violate sections 32703 and 32705 (under section 32703(4)) which, the Bank argues, Plaintiffs have not alleged.

Although the Bank argues that Plaintiffs nowhere allege a "conspiracy," Plaintiffs' complaint states, "Said defendant [the Bank] participates with this and other sellers of defective used vehicles to low-income persons with knowledge of the pattern and practices of said sellers." Compl. ¶ 4(c). Generally, plaintiffs are required only to give "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Id. 8(e)(1). To be technical, however, a conspiracy is a combination or agree-

ment between two or more persons to join together to attempt to accomplish some unlawful purpose. Conspiracy has two elements: (1) two or more persons positively or tacitly come to a mutual understanding to try to accomplish an unlawful plan, and (2) the person willfully joins the conspiracy during its existence. "Participation," which Plaintiffs allege, is a form of mutual understanding; willfullness is implicit both in the notion of participation and in the allegation of "knowledge of the pattern and practice of said sellers." The pattern and practice of said sellers is alleged in *Count* One of Plaintiffs' complaint to be illegal, a violation of the Odometer Act. Accordingly, the Court finds and concludes that Plaintiffs have alleged violations of the Odometer Act, specifically conspiracy under subsection 32703(4), against the Bank sufficient to vest federal question jurisdiction in this Court.

**B. Federal Trade Commission "Holder Rule"**

Conspiracy is not the sole claim which Plaintiffs may pursue against the Bank in this action, however. The automobile purchase contract at issue here and assigned by Motors to the Bank contains the federally required[4] Federal Trade Commission ("FTC") notice:

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

This "Holder Rule" notice appears conspicuously, all capitals, bold, and displayed in a box. As assignee of the purchase contract, the Bank is a holder of the consumer credit contract. The Bank is thus subject, according to the plain language of the contract, to

---

**3.** Section 32704 deals with odometer service, repair, and replacement, which is not at issue here.

**4.** 16 C.F.R. § 433.

all claims and defenses which the debtor could assert against the seller, here Motors. In particular, the Bank is subject to Plaintiffs' claims of Odometer Act violations.

No district courts in this Circuit have examined the effect of this FTC provision; however, in *Maberry v. Said,* 911 F.Supp. 1393 (D.Kan.1995), the district court closely analyzed this Holder Rule provision in a factually similar case.[5] The *Maberry* Court examined the history of the FTC's development of the rule:

> Our primary concern ... has been the distribution or allocation of costs occasioned by seller misconduct in credit sale transactions. These costs arise from breaches of contract, breaches of warranty, misrepresentation, and even fraud. The current commercial system which enables sellers and creditors to divorce a consumer's obligation to pay for goods and services from the seller's obligation to perform as promised, allocates all of these costs to the consumer/buyer.

*Id.* at 1402, quoting 40 Fed.Reg. 53522 (Nov. 18, 1975).

Having stated its concerns, the FTC turned to the purpose and effect of the holder rule.

> [The FTC holder rule] is directed at the preservation of consumer claims and defenses. It will require that all consumer credit contracts generated by consumer sales include a provision which allows the consumer to assert his sale-related claims and defenses against any holder of the credit obligation. *From the consumer's standpoint, this means that a consumer can* (1) defend a creditor suit for payment of an obligation by raising a valid claim against the seller as a setoff, and *(2) maintain an affirmative action against a creditor who has received payments for a return of monies paid on account. The latter alternative will only be available where a seller's breach is so substantial*

> *that a court is persuaded that rescission and restitution are justified.*

*Id.* at 52524. (Emphasis added.)

The *Maberry* court concluded that "under appropriate circumstances, the FTC holder rule permits consumers to assert affirmatively against a subsequent holder of a note those claims that the consumer has against the original lender." 911 F.Supp. at 1403 (citations omitted). Appropriate circumstances are those where the seller's breach is so substantial that a court is persuaded rescission and restitution are justified. Fraudulent misrepresentation of odometer mileage, a 100,000 mile understatement in this case, would be, if provable, a violation of the Odometer Act sufficient to justify rescission and restitution.[6]

Plaintiffs may, therefore, maintain all claims which they have against Defendant Motors also against the Bank, pursuant to the plain language of the FTC Holder Rule notice, which was conspicuously displayed as part of the contract assigned by Motors to the Bank. In particular, Plaintiffs may maintain their claims of Odometer Act violations against the Bank as well as Motors. These violations include the alleged conspiracy to violate the Odometer Act, as well as all other violations. This Court, therefore, finds and concludes it has federal question jurisdiction against both Defendants.

## III. CONCLUSION

Accordingly, the Court **DENIES** the Bank's motion to dismiss for lack of subject matter jurisdiction.

The Clerk is directed to send a copy of the Order to counsel of record.

---

5. The Bank argues that *Maberry* goes contra to Plaintiffs' argument; however, the Bank cites a section of the case which relates to elements of proof of odometer fraud, rather than the section relevant to this discussion, "FTC Holder Rule." *Id.* at 1401.

6. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993) (citations omitted).