# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3097

_____

| | | |
|---|---|---|
| Ann M. LaBarre, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Credit Acceptance Corporation, a | * | District Court for the District |
| Michigan corporation; Bankers & | * | of Minnesota. |
| Shippers Insurance Company, sued as | * | |
| "Bankers and Shippers Insurance | * | |
| Company", a foreign corporation; First | * | |
| Lenders Insurance Services, Inc., a | * | |
| foreign corporation, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 10, 1999
Filed: April 28, 1999

_____

Before FAGG and WOLLMAN,* Circuit Judges, and WEBBER,** District Judge.

_____

*The Honorable Roger L. Wollman succeeded the Honorable Pasco M. Bowman as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the end of the day on April 23, 1999.

**The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

FAGG, Circuit Judge.

Ann M. LaBarre appeals the district court's dismissal of her complaint against Credit Acceptance Corporation (CAC), Bankers & Shippers Insurance Company (Bankers), and First Lenders Insurance Services, Inc. (First Lenders). We affirm in part, reverse in part, and remand for further proceedings.

LaBarre's complaint alleges the following facts, which we assume to be true for the purposes of LaBarre's appeal. See Doe v. Norwest Bank Minnesota, N.A., 107 F.3d 1297, 1303-04 (8th Cir. 1997). When LaBarre purchased a used vehicle from a Minnesota car dealer, she signed a retail installment contract that stated the dealer was assigning the contract to CAC, a company which provides financing and collection related services to car dealers. Because LaBarre bought the vehicle on credit, the installment contract required LaBarre to maintain insurance on her car until the loan was repaid and permitted LaBarre to fulfill this requirement by providing her own insurance or by obtaining insurance through CAC. LaBarre directed CAC to purchase limited physical damage (LPD) insurance on her behalf. From Bankers and First Lenders, CAC had previously purchased vendor single interest/collateral protection (VSI) insurance, which covered CAC for any loss in the amount of CAC's interest in the vehicles CAC financed. Rather than obtaining LPD insurance for LaBarre, CAC simply billed LaBarre for its VSI insurance coverage on LaBarre's car.

LaBarre filed this class action lawsuit against CAC, Bankers, and First Lenders, alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and various state law causes of action. CAC, Bankers, and First Lenders filed motions to dismiss LaBarre's complaint for failure to state a claim upon which relief could be granted, see Fed. R. Civ. P. 12(b)(6), and the district court dismissed LaBarre's complaint in its entirety. On appeal, we will affirm the district court's dismissal of LaBarre's complaint only if it appears beyond a reasonable doubt that LaBarre can prove no set of facts entitling her to relief. See Doe, 107 F.3d at 1304.

LaBarre first contends the district court committed error in dismissing her RICO claims against CAC, First Lenders, and Bankers. LaBarre alleges in her complaint that CAC, First Lenders, and Bankers engaged in a scheme to defraud purchasers such as LaBarre by obtaining "VSI insurance for CAC instead of the property insurance contracted for in the [p]urchasers' retail [i]nstallment [c]ontracts." Compl. ¶ 66. LaBarre contends CAC, First Lenders, and Bankers "share[d] in the insurance charges and overcharges obtained from the sale of undisclosed higher-costing VSI [insurance] that had not been contractually authorized by [LaBarre]." Compl. ¶ 62. LaBarre alleges these activities constitute a pattern of racketeering activity involving mail fraud and wire fraud in violation of RICO. See 18 U.S.C. §§ 1962(c), (d) (1994). The district court concluded the McCarran-Ferguson Act barred all of LaBarre's RICO claims.

The McCarran-Ferguson Act states, "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b) (1994). In other words, the McCarran-Ferguson Act bars the application of a federal statute if the federal statute does not relate specifically to the business of insurance, a state statute has been enacted to regulate the business of insurance, and the federal statute would invalidate, impair, or supersede the state statute. See Humana Inc. v. Forsyth, 119 S. Ct. 710, 716 (1999); Doe, 107 F.3d at 1305. Because RICO does not relate specifically to the business of insurance and because Minnesota has enacted a comprehensive statutory scheme to regulate the business of insurance, see Doe, 107 F.3d at 1306, the decisive question is whether RICO's application to the activities of CAC, First Lenders, and Bankers would invalidate, impair, or supersede Minnesota's insurance laws.

As to insurers First Lenders and Bankers, the answer to that question is yes, and LaBarre's arguments to the contrary are foreclosed by this court's holding in Doe and by the United States Supreme Court's recent decision in Humana. The alleged

activities of First Lenders and Bankers in scheming to sell LaBarre higher-priced VSI insurance rather than LPD insurance are governed by Minnesota's insurance law. See Minn. Stat. § 72A.20 (1998). As we stated in Doe, Minnesota law permits only administrative recourse for violations of § 72A.20 and, unlike RICO, does not provide a private cause of action for violations of this provision. See Doe, 107 F.3d at 1306; see also Morris v. American Family Mut. Ins. Co., 386 N.W.2d 233, 235-38 (Minn. 1986) (no private cause of action for § 72A.20 violation). Accordingly, we held in Doe that the McCarran-Ferguson Act barred the application of RICO to an insurer which allegedly violated § 72A.20 because "the extraordinary remedies of RICO would frustrate, and perhaps even supplant, Minnesota's carefully developed scheme of regulation." Doe, 107 F.3d at 1308. The Supreme Court applied similar analysis in Humana and stated the McCarran-Ferguson Act precludes the application of RICO when RICO directly conflicts with a state's insurance statutes, frustrates any declared state policy, or interfere's with a state's administrative regime. See Humana, 119 S. Ct. at 717. Thus, guided by our decision in Doe, the district court correctly concluded that the McCarran-Ferguson Act barred LaBarre's RICO claims against First Lenders and Bankers.

We disagree with the district court, however, that LaBarre's RICO claims against CAC should be dismissed. Taking the factual allegations in LaBarre's complaint as true, LaBarre asserts CAC, a financial services company, participated in the scheme by purchasing insurance for itself from First Lenders and Bankers to protect its own security interest and by then passing the cost of this insurance coverage on to LaBarre without LaBarre's authorization. As pleaded, CAC's alleged activities are not governed by Minnesota's insurance statutes, see Minn. Stat. §§ 72A.17-.32 (1998), and do not involve the business of insurance within the framework of the McCarran-Ferguson Act, see Securities & Exchange Comm'n v. National Sec., Inc., 393 U.S. 453, 459 (1969) ("The McCarran-Ferguson Act was an attempt . . . to assure that the activities of insurance companies in dealing with their policyholders would remain subject to state regulation"); Kenty v. Bank One, Columbus, N.A., 92 F.3d 384, 393

(6th Cir. 1996) (McCarran-Ferguson Act did not protect bank from RICO action when bank purchased insurance to protect its own security risk and then passed those costs on to plaintiffs). Thus, based on the allegations in LaBarre's complaint, the McCarran-Ferguson Act does not prohibit LaBarre's RICO claims against CAC, and the district court should not have dismissed these claims. Additionally, we disagree with CAC's assertion that LaBarre failed sufficiently to plead the predicate offenses of mail fraud and wire fraud. See Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1069 (8th Cir. 1995).

Next, LaBarre contends the district court improperly dismissed her state law claims against CAC for the car dealer's alleged breach of contract, violation of the Minnesota Motor Vehicle Retail Installment Sales Act (MVRISA), and breach of fiduciary duty. As required by the Federal Trade Commission (FTC), see 16 C.F.R. § 433.2 (1998), LaBarre's installment contract contained the FTC's Holder Rule, which provides in relevant part, "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof." Id. (capitalization omitted). Based on this language, LaBarre alleges in her complaint that CAC, as the designated assignee in the installment contract, is liable for the car dealer's breach of contract, MVRISA violations, and breach of fiduciary duty. See Compl. ¶¶ 78, 86, 90, 95. We disagree.

Although the Holder Rule allows consumers to assert sale-related claims and defenses against any holder of a consumer contract, see 40 Fed. Reg. 53,524 (1975), "[t]he words 'Claims and Defenses' . . . are not given any special definition by the [FTC]. The phrase simply incorporates those things which, as a matter of other applicable law, constitute legally sufficient claims and defenses in a sales transaction. Appropriate statutes, decisions, and rules in each jurisdiction will control. . . ." 41 Fed. Reg. 20,023-24 (1976). Minnesota law subjects any assignee of a consumer credit contract to all of the consumer's claims and defenses against the seller arising from the

sale, but also limits the consumer's rights, allowing those rights to be asserted only as a "defense to or set off against a claim by the assignee." Minn. Stat. § 325G.16, subd. 3 (1998). Thus limited, LaBarre could not affirmatively bring these state law causes of action against CAC as the assignee of the dealer. Instead, LaBarre could only raise these claims as a defense in an action brought against her by CAC, and the district court properly dismissed these causes of action against CAC.

Finally, LaBarre contends the district court committed error in dismissing her claim that CAC, Bankers, and First Lenders tortiously interfered with her contractual relationship with the car dealer. Again, we disagree. To establish a tortious interference with contract claim, LaBarre must show the existence of a contract, the alleged wrongdoers' knowledge of the contract, their unjustified and intentional procurement of its breach, and resulting damages. See R.A., Inc. v. Anheuser-Busch, Inc., 556 N.W.2d 567, 570 (Minn. App. 1996). We believe the district court correctly dismissed this claim because, at best, LaBarre pleaded that CAC, First Lenders, and Bankers intentionally procured the breach of their own contracts with LaBarre to provide her with LPD insurance. See Bouten v. Richard Miller Homes, Inc., 321 N.W.2d 895, 900-01 (Minn. 1982) (a party cannot tortiously interfere with its own contract).

We affirm the district court's dismissal of LaBarre's claims against Bankers and First Lenders and LaBarre's tortious interference, breach of contract, MVRISA, and breach of fiduciary duty claims against CAC, but we reverse the district court's dismissal of LaBarre's RICO claims against CAC and remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-