**JOSEPH F. CAPPELLI & SONS, INC., Appellee,**

v.

**KEYSTONE CUSTOM HOMES, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 9, 2002.

Filed Jan. 9, 2003.

---

**644**

James H. Thomas, Lancaster, for appellant.

Gerard J. Pisarcik, Lemoyne, for appellee.

Before HUDOCK, FORD ELLIOTT, and OLSZEWSKI, JJ.

OPINION BY Judge OLSZEWSKI.

¶ 1 Keystone Custom Homes, Inc. ("Keystone") appeals from awards entered in favor of Joseph F. Cappelli & Sons, Inc. ("Cappelli") for violation of Pennsylvania's Contractor and Subcontractor Payment Act. Keystone argues that the trial court erred by denying Keystone's motions for directed verdict and judgment notwithstanding the verdict, and by awarding untimely attorneys' fees. We, however, affirm.

¶ 2 As expressed by the trial court:

In March 1999, Keystone purchased land in Penn Township to develop a housing community known as Charlton Farms. Keystone was the owner of Charlton Farms when, in October 1999, it entered into a contract with Cappelli to construct the roads and install site improvements. The contract, titled "Sub–Contract Agreement", designated Keystone as contractor and Cappelli as subcontractor. Cappelli proceeded with the work and submitted invoices for payment to Keystone. Keystone failed to pay the amounts due on four specific invoices from November and December 1999 and Cappelli instituted this lawsuit [seeking damages for breach of contract and—pursuant to the Contractor and Subcontractor Payment Act, 73 Pa. C.S.A. §§ 501–516—interest, penalties and attorneys' fees]. Keystone alleged in its Counterclaim that it did not pay the invoices because Cappelli did not properly perform the work and the cost of remedying the construction would exceed the amount of Cappelli's invoices.

Trial Court Opinion, 3/4/02, at 2.

¶ 3 Following trial, a jury returned a verdict against Keystone's counterclaim and in favor of Cappelli for breach of contract in the amount of $98,084.54. The jury also found for Cappelli on the Contractor and Subcontractor Payment Act

claim, entitling Cappelli to an award of one percent per month of both penalty and interest, which totaled $39,243.36. By Order of March 4, 2002, Keystone's Post–Trial Motions were denied by the trial court. By Order of May 14, 2002, the trial court awarded Cappelli attorneys' fees and expenses.

■ ¶ 4 Keystone's first argument on appeal requires determination of whether Keystone was, pursuant to Pennsylvania's Contractor and Subcontractor Payment Act, 73 Pa.C.S.A. §§ 501–516, an "owner" or a "contractor." "In examining this determination [of statutory interpretation], our scope of review is plenary, as it is with any review of questions of law." *Phillips v. A–Best Prods. Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995). We find that Keystone was an "owner," and not a "contractor."

¶ 5 The issue of the "owner" or "contractor" distinction begins with Keystone's argument that, contrary to the ruling below, it is not subject to the penalties, interest and attorneys' fees that the Act provides for. As pointed out by Keystone:

> The Act defines the payment obligations from an owner of real property to a contractor, as well as the payment obligations from a contractor to a subcontractor. Section 505(c) of the Act provides that an owner must pay a contractor 20 days after delivery of the invoice. 73 P.S. § 505(c). If the relationship is between a[ ] contractor and a subcontractor, the contractor must pay the subcontractor within 14 days after receiving payment for the subcontractor's work. *Id.* at § 507(c).

Brief of Appellant at 12. The Act provides for penalties, interest, and ultimately attorney's fees if payments are not made within the mandated time periods.

¶ 6 Keystone argues that, in its relationship with Cappelli, it was a "contractor," not an "owner." According to Cappelli:

> By making this argument, Keystone is attempting to take advantage of a key difference in the payment obligations of an owner and a contractor under the Act. Section 7 of the Act (73 P.S. § 507) addresses a **contractor's** payment obligations—payment by a contractor to a subcontractor is excused when the contractor has not received payment from the owner. Section 5 of the Act (73 P.S. § 505) addresses the **owner's** payment obligations and, since the owner is ultimately responsible for paying for the work, contains no such "pay when paid" condition.

Brief of Appellee at 11 (emphasis in original).

¶ 7 We agree. For purposes of penalties provided by the Act, a contractor's duty to pay subcontractors arises to the extent of the "amount received" from the owner. 73 Pa.C.S.A. § 507(c). No such predicate modifies an owner's payment duties under the Act.

¶ 8 The trial court found that "Keystone met the definitions of both 'owner' and 'contractor'." Trial Court Opinion, 3/4/02, at 4. For reasons that are not entirely clear, the trial court also found that it was Keystone wearing its hat as "owner," not as "contractor," whom "was the entity responsible for payment concerning this construction project." Id. Thus, the court held that Keystone's duty to pay under the Act was that of an owner, whose duty to pay is not qualified like that of a contractor's.

¶ 9 Keystone agrees with the trial court that it was both a "contractor" and an "owner" under the Act, but argues that, for the particular purpose of construing payment duties arising under the Act, Keystone was a contractor. Keystone argues that this characterization of their role is compelled by judicial deference to the

understanding the parties had of their relationship, as expressed by Keystone labeling itself "contractor" and Cappelli "subcontractor" in their contract.

¶ 10 We do not agree that Keystone was both an "owner" and a "contractor" under the Act. While it may be correct that the language of the contract is the source of our understanding of the agreement between the parties, the language of the Act is the source of our understanding of the Act's effect on that agreement. We look to the text of the statute, rather than the contractual labels used by the parties, to determine what the Act required of the parties to this dispute.

¶ 11 The Contractor and Subcontractor Payment Act defines "owner," in relevant part, as: "A person who has an interest in real property that is improved and who ordered the improvement to be made." 73 Pa.C.S.A. § 502. It is uncontested that Keystone is the "owner," in a colloquial sense, of the property in question. They also fit the Act's definition of "owner."

¶ 12 Keystone, however, is not a "contractor" under the Act. The Act defines "contractor" as: "A person *authorized or engaged by an owner* to improve real property." 73 Pa.C.S.A. § 502 (emphasis added). If Keystone was a "contractor," who or what was the owner that authorized or engaged Keystone to improve their property—themselves? Understanding the Act to contemplate such an arrangement would lead to the illogical conclusion that the Act applies to mandate payment schedules in a situation in which an owner engages itself to improve its own property.

¶ 13 Keystone is not a "contractor" because it was not "authorized or engaged by an owner" to improve the property. The Act provides payment deadlines and penalties to encourage fair dealing among parties to a construction agreement. A contractor's duty to pay under the Act only arises to the extent that it receives payment from an "owner." To interpret the statute to permit a party who meets the definition of "owner" to qualify as a "contractor" would permit that party to unilaterally avoid the payment duties of a contractor simply by not "paying" itself. Such a result, which bases duties mandated by the Act too heavily on fictional distinctions between persons, would abrogate the legislative purpose as embodied in the Act.

¶ 14 We find that Keystone was an owner, but not a contractor, for purposes of the Act. We agree with the *outcome* of the trial court's analysis: Keystone's duty to pay was that of an owner, not the qualified duty of a contractor.

¶ 15 Secondly, Keystone argues that even if their relationship with Cappelli was not a contractor/subcontractor relationship, "no two reasonable jurors could have found that Cappelli was entitled to payment pursuant to the Act." Brief of Appellant at 17. Apparently, as the argument goes, because no reasonable person could find that Keystone did not fit the Act's good-faith-claim safe harbor provision, the trial court erred in not entering a judgment notwithstanding the verdict in Keystone's favor.

> In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are [sic] identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion

or an error of law that controlled the outcome of the case.

*Lanning v. West,* 803 A.2d 753, 756 (Pa.Super.2002) (citations and quotation marks omitted).

¶ 16 The Contractor and Subcontractor Payment Act, at 73 Pa.C.S.A. § 506, permits owners to withhold payment, without incurring penalties under the Act, for good faith claims for "deficiency items." A deficiency item is "[w]ork performed but which the owner, the contractor or the inspector will not certify as being completed according to the specifications of a construction contract." 73 Pa.C.S.A. § 502. The Act requires that "[i]f an owner withholds payment from a contractor for a deficiency item, it shall notify the contractor of the deficiency item within seven calendar days of the date that the invoice is received." 73 Pa.C.S.A. § 506.

■ ¶ 17 Keystone maintains that, as evidenced by what they presented at trial, they

> had a good-faith, reasonable claim that Cappelli failed to perform in accordance with the [agreement]. Even though a jury determined that Cappelli fulfilled its obligations, there can be no question that Keystone believed that they had not. There was no dispute that this belief was "reasonable", even if later proven to be incorrect.

Brief of Appellant at 18.

¶ 18 We do not agree with Keystone. Reasonable minds could disagree about whether Keystone had a good faith claim that Cappelli breached the construction agreement. As pointed out by the trial court: (1) several of the tests conducted by engineers concluded that Cappelli's construction work for Keystone was satisfactory; (2) Keystone evidenced that it was satisfied with the work done by Cappelli by making changes (that typically follow

the successful completion of a portion of a project in the construction industry) in its financing; and (3) no evidence was presented that Keystone provided Cappelli notice of any deficiency as the Act would have required. *See* Trial Court Opinion, 3/4/02, at 5–6. Based on evidence presented at trial, a reasonable juror could conclude that Keystone's failure to compensate Cappelli was not based on a good faith claim for a deficiency item.

¶ 19 Keystone's final argument is that Cappelli's award of attorneys' fees is barred as untimely. We disagree.

■ ¶ 20 Attorneys' fees and expenses are recoverable, as a function of the resolution of the underlying dispute, under the Contractor and Subcontractor Payment Act. The Act provides: "Notwithstanding any agreement to the contrary, the substantially prevailing party in any proceeding to recover any payment under this act shall be awarded a reasonable attorney fee in an amount to be determined by the court or arbitrator, together with expenses." 73 Pa.C.S.A. § 512(b).

¶ 21 According to the trial court, the issue of attorneys' fees was raised when, "[a]fter the recording of the jury's verdict and in response to Cappelli's question regarding the attorneys' fees issue, [the trial court] instructed Cappelli to contact [the trial court] to schedule a hearing." Trial Court Opinion, 3/4/02, at 8.

¶ 22 Keystone points out the uncontested fact that "Cappelli failed to present a petition for the award of attorneys' fees until after thirty days had passed," and so, they argue, "was barred from doing so pursuant to 42 Pa.C.S. § 5505." Brief of Appellant at 24.

¶ 23 42 Pa.C.S.A. § 5505, which applies to modification of orders, provides: "Except as otherwise provided or prescribed by law, a court upon notice to the parties

may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed."

¶ 24 Section 5505, contrary to Keystone's argument, did not bar the trial court's award of attorney's fees. "A court has the inherent power to reconsider its own rulings." *Atlantic Richfield Co. v. J.J. White, Inc.,* 302 Pa.Super. 276, 448 A.2d 634, 636 (1982). The time limit imposed by § 5505 applies only to final orders. *Daywalt v. Montgomery Hosp.,* 393 Pa.Super. 118, 573 A.2d 1116 (1990). "A final order is generally one which terminates the litigation, disposes of the entire case, or effectively puts the litigant out of court." *Hall v. Lee,* 285 Pa.Super. 542, 428 A.2d 178, 179 (1981); *see also* Pa. R.A.P. 341.

¶ 25 The trial court expressly reserved for determination the issue of attorneys' fees when, "[a]fter the recording of the jury's verdict and in response to Cappelli's question regarding the attorneys' fees issue, [the trial court] instructed Cappelli to contact [the trial court] to schedule a hearing." Trial Court Opinion, 3/4/02, at 8. Because the trial court so reserved the issue, and because the right to attorneys' fees arose as a function of the rights determined in the underlying litigation, no Order of the trial court can be understood to be final absent resolution of the attorneys' fees issue.

¶ 26 The trial court's response to Keystone's argument that the award of attorneys' fees was time barred reveals that no order issued prior to resolution of the attorneys' fees issue was final. As the trial court explained in its Award of Attorney's Fees and Expenses, 5/14/02, at 2, n. 1:

I reject that [time bar] argument because § 512 of the Act imposes no time limit for seeking the fees and costs.

Based on the jury's determination that the Act was violated, the interest and penalty provided for in § 512(a) was added to the Verdict, and an amended verdict was entered on October 30, 2001. I declined to schedule a hearing on the amount of attorney's fees and expenses until I determined if post trial motions would be filed, and when they were, until they were decided. The hearing on May 6, 2002, was scheduled as soon after my denial of the Post Trial Motions as my schedule permitted.

¶ 27 The trial court's award of attorney's fees was not time barred by 42 Pa.C.S.A. § 5505.

¶ 28 Order affirmed.