Fred BEEMUS and Cathi Beemus, Husband and Wife, Appellee

v.

INTERSTATE NATIONAL DEALER SERVICES, INC., Chrysler, Corp., Travelers Indemnity Company, Brokerage Professionals, Inc., Primus Automotive Financial Services, Inc., and Mackay–Swift, Inc., Appeal of: Primus Automotive Financial Services, Inc., Appellants

Superior Court of Pennsylvania.

Argued Nov. 20, 2002.

Filed May 2, 2003.

David E. Stern, Philadelphia, for Primus Automotive Financial, appellant.

Erin Brady, Pittsburgh, for Beemus, appellees.

Before: FORD ELLIOTT, ORIE MELVIN, and GRACI, JJ.

GRACI, J.:

¶ 1 In this civil class action commenced by Appellees, Fred and Cathi Beemus (the "Beemuses"), Appellant, Primus Automotive Financial Services, Inc. ("Primus"), appeals from an order entered in the Court of Common Pleas of Allegheny County on March 5, 2002 denying Primus's preliminary objection to Count II of the Beemuses' complaint.[1] We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 The Beemuses purchased an automobile from Mackay–Swift, Inc. ("Mackay") on June 17, 1997. The Beemuses also purchased a service contract from Mackay that was issued by Interstate National Dealer Services, Inc. ("Interstate"). The costs of the automobile and service contract were financed through an installment contract that was assigned to Primus. The installment contract contained the following provision:

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR

---

1. The trial court's order of March 5, 2002, amended the court's previous order dated February 8, 2002, to include the following statement: "this is a final order and an immediate appeal from this Order will facilitate resolution of the entire case." Therefore, the instant appeal is properly before this Court pursuant to Pa.R.A.P. 341(c) ("When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court ... may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered.").

COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Regulations promulgated by the Federal Trade Commission ("FTC") require inclusion of the above provision in all consumer credit contracts. 16 C.F.R. § 433.2(a). The provision is commonly referred to as the "FTC Holder Rule."

¶ 3 In Count I of their complaint, the Beemuses averred that Mackay violated the Pennsylvania Motor Vehicle Sales Finance Act, 69 P.S. §§ 601–637 ("MVSFA"), by "contracting for and charging charges in connection with the sale of Interstate service contracts in excess of that allowed by 69 P.S. § 631." Class Action Complaint, at 18. Count II alleged that Primus, by virtue of the FTC Holder Rule, "is contractually liable to the Beemuses and class Plaintiffs to the same extent as Mackay and other dealers who contracted for and financed the Interstate service contracts." *Id.* at 19. In overruling Mackay's demurrer to Count I, the trial court concluded that the Beemuses were entitled to pursue an affirmative right of action against Mackay under the MVSFA. Based upon application of the FTC Holder Rule, the trial court then determined that Primus, as the undisputed assignee of the Beemus/Mackay contract, was liable for all affirmative claims that the Beemuses would have been entitled to bring against Mackay in connection with the purchase and sale of the motor vehicle and service contract. Accordingly, the trial court dismissed Primus's preliminary objection to Count II of the Beemus complaint and this timely appeal from that ruling followed.[2]

¶ 4 Primus raises one issue on appeal:

Whether a plaintiff, in order to prosecute an action against a blameless assignee under the FTC Holder Rule, must plead rescission and allege that little or nothing of value was received?

Appellant's Brief, at p. vii. This issue is one of first impression in this Common-

---

2. The remaining counts of the Beemuses' complaint and the trial court's disposition of each claim in its order of February 8, 2002 are as follows:

Count III: Constructive trust claim against Interstate regarding proceeds of alleged sales of insurance in Pennsylvania without a license. The trial court sustained Interstate's preliminary objections and dismissed the claim with prejudice.

Count IV: Constructive trust claim against Travelers Indemnity Company (same). The trial court sustained Travelers' preliminary objections and dismissed the claim with prejudice.

Count V: Respondeat superior claim against Interstate for conduct of Mackay and other car dealers as Interstate's alleged agents. Interstate's preliminary objections were sustained and the claim was dismissed with prejudice.

Count VI: Breach of fiduciary duty claim against Mackay and other car dealers for al-leged premature payments of proceeds from service contracts into escrow accounts administered by Interstate and Brokerage Professionals, Inc. Preliminary objections of Mackay were sustained and the claim was dismissed with prejudice.

Count VII: Breach of fiduciary duty claim against Primus by virtue of the FTC Holder Rule. The trial court found that the Beemuses had failed to allege sufficient facts to support a finding that Primus owed a fiduciary duty to the Beemuses. Accordingly, the trial court sustained Primus's preliminary objections and dismissed the claim with prejudice.

Count VIII: Aiding and abetting breach of fiduciary duty claim against Interstate. The trial court sustained Interstate's preliminary objections and dismissed the claim with prejudice.

Count IX: Conspiracy to violate the MVSFA against Interstate. Interstate's preliminary objections were sustained and the claim was dismissed with prejudice.

wealth and has generated a split of authority among state and federal courts.

## II. STANDARD AND SCOPE OF REVIEW

■ ¶ 5 "Our standard of review of a ruling on preliminary objections requires that we accept as true all of the factual averments of the complaint." *Lytle v. CitiFinancial Services, Inc.,* 810 A.2d 643, 655 (Pa.Super.2002) (citations omitted). "The interpretation of a contract is a matter of law and an appellate court need not defer to the conclusions of the trial court. Moreover, when the terms of a contract are clear and unequivocal, meaning must be determined from the language itself." *Roman Mosaic and Tile Co. v. Thomas P. Carney, Inc.,* 729 A.2d 73, 77 (Pa.Super.1999) (citations omitted).

■ ¶ 6 The issue in this case is not purely one of contract law, however, since the contractual term at issue must be included in all consumer credit agreements pursuant to a regulation promulgated by a federal agency—in this case the FTC. Such a regulation has the force of law "only if Congress has delegated legislative power to the agency and if the agency intended to exercise that power in promulgating the rule." *American Mining Congress v. Mine Safety & Health Admin.,* 995 F.2d 1106, 1109 (D.C.Cir.1993), *cited with approval in Elizabeth Blackwell Health Center for Women v. Knoll,* 61 F.3d 170, 181 (3d Cir.1995), *cert. denied, Knoll v. Elizabeth Blackwell Health Center for Women,* 516 U.S. 1093, 116 S.Ct. 816, 133 L.Ed.2d 760 (1996) (citation omitted). The intent to exercise legislative power may be inferred by, *inter alia,* the agency's publication of a rule in the Code of Federal Regulations. *Id.* ("44 U.S.C. § 1510 limits publication in that code to rules 'having general applicability and legal effect.'") (citation omitted). There is no question that the FTC Holder Rule at issue here has the force of law.

■ ¶ 7 Finally, since our analysis involves examination of issues regarding statutory interpretation, we note that "our scope of review is plenary, as it is with any review of questions of law." *Joseph F. Cappelli & Sons, Inc. v. Keystone Custom Homes, Inc.,* 815 A.2d 643, 645 (Pa.Super.2003) (citation omitted).

## III. DISCUSSION

¶ 8 The Beemuses argue that the FTC Holder Rule unambiguously confers upon debtors damaged by seller misconduct two contractual rights against a creditor-assignee such as Primus: (1) the right to reduce their outstanding debt by the amount of their damages and (2) the right to obtain an affirmative recovery of monies paid where the damages exceed their outstanding debt. Primus counters that debtors such as the Beemuses may only maintain affirmative actions for recovery in those situations where there is a total failure of performance or where the debtor would be entitled to rescission of the underlying contract. Primus's argument is based principally on the official Statement of Basis and Purpose published by the FTC (the "FTC Statement") in conjunction with the FTC Holder Rule. The FTC Statement provides, in relevant part:

> From the consumer's standpoint, this means that a consumer can (1) defend a creditor suit for payment of an obligation by raising a valid claim against the seller as a set-off, and (2) maintain an affirmative action against a creditor who has received payments for a return of monies paid on account. *The latter alternative will only be available where a seller's breach is so substantial that a court is persuaded that rescission and restitution are justified.* The most typical example of such a case would involve

non-delivery, where delivery was scheduled after the date payments to a creditor commenced. Preservation of Consumers' Claims and Defenses, 40 Fed.Reg. 53,506, 53,524 (November 18, 1975) (emphasis added).

¶ 9 A number of courts have adopted the rationale advanced by Primus, with *Ford Motor Credit Co. v. Morgan*, 404 Mass. 537, 536 N.E.2d 587 (1989) being generally accepted as the seminal case. In *Morgan*, the Supreme Judicial Court of Massachusetts held that the purchasers of an automobile could not seek affirmative recovery from an assignee-creditor for breach of warranty or fraud by the original seller. *Id.* at 591. The *Morgan* court stopped short of limiting consumers to a purely defensive position, noting that "[t]his would be in clear contravention of the FTC's intention." *Id.* at 590, fn. 5 [3] (citations omitted). The court suggested that in order for the Morgans to maintain an action for affirmative recovery, they would have had to demonstrate either a right to rescind the underlying sale or that they received little or nothing of value from the seller. *Id.*

¶ 10 In *Felde v. Chrysler Credit Corp.*, 219 Ill.App.3d 530, 162 Ill.Dec. 565, 580 N.E.2d 191 (1991), the Appellate Court of Illinois for the Second District set forth a more clear "rescission requirement." Specifically, the *Felde* court held that a consumer could maintain an affirmative action against an assignee-creditor for a refund of all monies paid on an account where "the seller's breach was so substantial that rescission and restitution were justified under applicable State law principles." *Id.* at 196 (citations omitted). The Illinois court suggested that, according to the FTC, one such instance would be when a consumer has commenced payment under a contract and received little or nothing of value from the seller. *Id.* (citation omitted).

¶ 11 Other jurisdictions addressing the viability of affirmative claims by consumers under the FTC Holder Rule have adopted rules similar to those announced in *Morgan* and *Felde*. See, e.g., *Crews v. Altavista Motors, Inc.*, 65 F.Supp.2d 388 (W.D.Va.1999) (prohibiting consumers from using FTC Holder Rule affirmatively against assignee-creditor absent evidence that consumers' claims were so large that they wiped out remainder of any debt); *Boggess v. Lewis Raines Motors, Inc.*, 20 F.Supp.2d 979 (S.D.W.Va.1998) (under appropriate circumstances, such as where seller's breach is so substantial that rescission and restitution are justified, consumer may bring affirmative claim against assignee); *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill.1996) (allowing consumer's affirmative claim for recovery against assignee when breach of warranty by seller warrants rescission of contract under state law); *In Re Hillsborough Holdings Corp.*, 146 B.R. 1015 (Bkrtcy.M.D.Fla.1992) (plaintiff consumer seeking affirmative recovery must have actually commenced payment under contract and received little or nothing of value).

---

**3.** Notably, the Eighth Circuit Court of Appeals has imposed such a limitation on consumer claims. In *LaBarre v. Credit Acceptance Corp.*, 175 F.3d 640 (8th Cir.1999), *rehearing and rehearing en banc denied* (1999), the Court of Appeals, noting that the FTC did not specifically define the words "claims and defenses" as they are used in the FTC Holder Rule, held that "[t]he phrase simply incorporates those things which, as a matter of other applicable law, constitute legally sufficient claims and defenses in a sales transaction." *Id.* at 644, *quoting* 40 Fed.Reg. 53,524 (1975). By essentially engrafting Minnesota law onto the FTC Holder Rule, the Eighth Circuit limited consumer claims to those asserted as a "defense to or set off against a claim by the assignee." *Id.* (quoting Minn.Stat. § 325G.16, subd. 3 (1998)).

*But see Reavley v. Toyota Motor Sales U.S. Corp.,* 2001 WL 127662 (N.D.Ill., February 14, 2001) (liability under FTC Holder Rule arises when facts support rescission, not just when plaintiff has affirmatively sought rescission); *Eachen v. Scott Housing Systems, Inc.,* 630 F.Supp. 162 (M.D.Ala.1986) (refusing to engraft onto FTC Holder Rule certain state law provisions restricting consumers to a defensive position, thereby allowing affirmative claim to go forward, but suggesting that recovery should be allowed only where rescission and restitution are justified).

¶ 12 Other jurisdictions, however, permit consumer plaintiffs to maintain affirmative claims for recovery under the FTC Holder Rule without asserting a claim for rescission or otherwise demonstrating that they received little or nothing of value under the contract. *See, e.g., Lozada v. Dale Baker Oldsmobile, Inc.,* 91 F.Supp.2d 1087, 1097 (W.D.Mich.2000) ("[N]either the text nor the commentary to the Holder Rule limits the availability of affirmative consumer claims against assignee-creditors to those who assert a right of rescission under common law."); *Simpson v. Anthony Auto Sales, Inc.,* 32 F.Supp.2d 405, 409 fn. 10 (W.D.La.1998) ("[A] plaintiff should not be required to first prove that she has received little or nothing of value in order to recover from her creditor, as the FTC notice does not advise the creditor" of such a requirement); *Jaramillo v. Gonzales,* 132 N.M. 459, 50 P.3d 554 (App.2002), *cert. denied,* 132 N.M. 288, 47 P.3d 447 (2002) (holding that FTC Holder Rule does not limit affirmative claims to those instances where rescission would be appropriate); *Alduridi v. Community Trust Bank, N.A.,* 1999 WL 969644, *5 (Tenn.Ct.App., October 26, 1999) (noting that plaintiff-debtor's decision not to seek rescission does not limit her right under FTC Holder Rule to obtain recovery for amounts paid under the contract); *Oxford Finance Companies, Inc. v. Velez,* 807 S.W.2d 460 (Tex.App. 1991) (finding that clear and unambiguous language of FTC Holder Rule does not purport to limit a creditor-assignee's liability to situations where debtor seeking affirmative relief has received little or nothing of value under the contract). *See also Maberry v. Said,* 911 F.Supp. 1393, 1403 (D.Kan.1995) ("In light of the plain language and the legislative history of the FTC holder rule, the court concludes that, under appropriate circumstances, the FTC holder rule permits consumers to assert affirmatively against a subsequent holder of a note those claims that the consumer has against the original lender.") (citation omitted).

¶ 13 For the reasons set forth below, we agree with those courts that do not require consumers seeking affirmative recovery under the FTC Holder Rule to assert a claim for rescission and restitution or otherwise demonstrate a failure of performance.

¶ 14 First, the FTC Holder Rule is unambiguous and, on its face, places no limitation on the types of claims or defenses that a debtor may assert against a creditor-assignee. The only express limitation in the FTC Holder Rule concerns the maximum recovery available to a debtor: "[r]ecovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder." 16 C.F.R. § 433.2(a). Because the rule is unambiguous, there is no need to refer to the FTC Statement to understand (or supplement) the plain language of the FTC Holder Rule. *See* 1 Pa.C.S.A. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."); 1 Pa. C.S.A. § 1939 (official commentary of entity which drafted statute may be consulted

in certain circumstances to determine construction or application of the statute, however "the text of the statute shall control in the event of conflict between its text and such comments or report.").[4]

¶ 15 Even if we were to accept Primus's argument that the FTC Statement is somehow apposite to resolution of the issue herein, we would fault Primus for its unduly narrow interpretation of that commentary. The FTC Statement discusses at length the rationale behind the FTC Holder Rule and the FTC's express desire to "reallocat[e] the costs of seller misconduct in the consumer market," by "compel[ling] creditors to either absorb seller misconduct costs or return them to sellers." Preservation of Consumers' Claims and Defenses, 40 Fed.Reg. 53,506, 53,523 (November 18, 1975). To limit consumer claims to only those situations where rescission of the contract is appropriate would, in many instances, confound the FTC's goal of shifting liability for seller misconduct from the consumer to the seller or its assignee. While it may be true that, as a practical matter, a debtor entitled to an affirmative recovery of damages in excess of the amount due on an account will typically also be entitled to rescission, we conclude there is no basis for transforming that prediction into a legal limitation on affirmative consumer claims.

¶ 16 The rule that we adopt today is in accord with a staff opinion letter issued by the FTC on September 25, 1999. The author of the FTC opinion letter expressly rejects the reasoning of *Morgan, supra,* and writes:

If the Commission had meant to limit recovery to claims subject to "rescission" or similar remedy, it would have said so in the text of the Rule and drafted the contractual provision accordingly.

Our view is best stated by the court in *Oxford Finance Companies v. Velez,* 807 S.W.2d 460, 463 (Tex.App.1991):

> The clear and unambiguous language of the contractual provision notifies all potential holders that, if they accept an assignment of the contract, they will be "stepping into the seller's shoes." The creditor/assignee will become "subject to" *any* claims or defenses the debtor can assert against the seller. The [FTC Holder Rule] does not say that a seller will be liable for the buyer's damages only if the buyer received little or nothing of value under the contract. Nor does the [FTC Holder Rule] purport to limit a creditor/assignee's liability in such fashion." (Emphasis in original)

FTC Staff Opinion Letter, 9/25/99, at 2. Although the opinion letter concludes with the proviso that "[t]he views set forth in this informal staff opinion letter are not binding on the Commission," we nevertheless find the letter persuasive as it directly addresses the issue on appeal. *See also Ford Motor Credit Company v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (U.S.Or.1980) ("[C]onsiderable respect is due 'the interpretation given [a] statute by the officers or agency charged with its administration.' An agency's construction of its own regulations has been

---

4. Moreover, since federal regulations mandate inclusion of the FTC Holder Rule notice in consumer credit contracts, reference to the FTC Statement for additional limiting language would be tantamount to a violation of the parol evidence rule. *See 1726 Cherry Street Partnership v. Bell Atlantic Properties, Inc.,* 439 Pa.Super. 141, 653 A.2d 663, 665

(1995), *appeal denied,* 544 Pa. 647, 664 A.2d 976 (1995) ("[a] written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, *or other writings,* are admissible to explain or vary the terms of the contract.") (emphasis added).

regarded as especially due that respect.") (citations omitted).

## IV. CONCLUSION

¶ 17 For the reasons set forth above, we hold that, pursuant to the FTC Holder Rule, a consumer-debtor may assert against a creditor-assignee of a consumer credit contract any and all affirmative claims for recovery, as well as defenses, that the consumer-debtor would be entitled to assert against the seller had the contract not been assigned. Further, a consumer-debtor asserting an affirmative claim for recovery shall not be required to demonstrate that he or she has received little or nothing of value or that rescission of the underlying contract is warranted.

¶ 18 Accordingly, we affirm the order of the trial court denying the preliminary objection of Primus to Count II of the appellants' complaint and remand the case for further proceedings consistent with this opinion.

¶ 19 Order affirmed; case remanded; jurisdiction relinquished.

¶ 20 ORIE MELVIN, J., files Dissenting Statement.

ORIE MELVIN, J., Dissenting:

¶ 1 I respectfully dissent from the majority's interpretation of the Notice provision of the FTC Holder Rule. Unlike the majority I do not find the language of the Notice is clear. Rather, I find the language as to what constitutes a claim to be ambiguous. Thus, resort to the "FTC Statement" for explication is appropriate. I agree that recovery under the FTC Holder Rule is twofold. A consumer can (1) defend a creditor suit for payment of an obligation by raising a valid claim against a seller as a set-off and (2) maintain an affirmative action against a creditor who has received payments for a re-

turn of monies paid on account. However, the "FTC Statement" clearly explains that "[t]he latter alternative will only be available where a seller's breach is so substantial that a court is persuaded that rescission and restitution are justified." 40 Fed. Reg. 53,506, 53,524 (1975). I further take issue with the majority's acceptance of an informal staff opinion letter, which has no binding authority on the Commission, as support of its interpretation and its willingness to dismiss out of hand the clear guidance of the FTC Statement, which is promulgated as part of the regulations.

¶ 2 Accordingly, I would follow the rationale of those courts identified by the majority that prohibit affirmative recovery absent a showing of facts that warrant recission of the contract. *See* Majority Op. at Paragraphs 8–10; *see also, Irby–Greene v. M.O.R., Inc.,* 79 F.Supp.2d 630, 635–36 (E.D.Va.2000) (stating:

> In light of the FTC's comments, most courts have limited the affirmative use of the clause to those cases in which 'rescission and restitution' are appropriate remedies, the consumer received 'little or nothing of value,' or there are otherwise 'appropriate circumstances' justifying affirmative use of the clause. In short, most courts have concluded that the primary purpose of the clause is to provide a defense to claims brought by the creditor; any affirmative use of the clause has generally been limited to the rare situation when the seller's breach renders the transaction practically worthless to the consumer.)

To hold otherwise is to make the creditor assignee the absolute insurer or guarantor of the seller's performance. I do not find this to be the purpose behind the FTC Holder Rule.