WILLIAM FRANKLIN PAYNE, JR., PLAINTIFF v. PARKS CHEVROLET, INC., DEFENDANT

No. COA94-919

(Filed 5 July 1995)

**Automobiles and Other Vehicles § 228 (NCI4th)— sale of damaged vehicle—failure to inform buyer—knowledge of seller —sufficiency of evidence**

In an action where plaintiff alleged that defendant dealer sold him a used truck without disclosing that the truck had been involved in a collision requiring repairs costing in excess of 25% of the vehicle's fair market value in violation of N.C.G.S. §§ 20-71.4(a) and 20-348(a), the evidence was sufficient for the jury where it tended to show that the previous owner told defendant he had wrecked the truck and had purchased it from a seller of wrecked vehicles; an experienced mechanic would have seen significant damage to the truck upon inspection; defendant knew or reasonably should have known of damage to the vehicle which exceeded 25% of the its fair market value; and defendant made no written disclosure of this fact to plaintiff.

**Am Jur 2d, Automobiles and Highway Traffic §§ 731, 732, 734.**

Appeal by defendant from judgment entered 14 April 1994 by Judge Chester C. Davis in Forsyth County District Court. Heard in the Court of Appeals 11 May 1995.

*Ronald B. Black for plaintiff-appellee.*

*Craige, Brawley, Liipfert, Walker & Searcy, L.L.P., by William W. Walker, for defendant-appellant.*

PAYNE v. PARKS CHEVROLET, INC.

[119 N.C. App. 383 (1995)]

JOHNSON, Judge.

Plaintiff commenced the following action on 27 May 1992 alleging that in December 1990, defendant sold him a used truck without disclosing that the truck "had been involved in a collision to the extent that the cost of repair exceeded twenty-five percent (25%) of its fair market value," in violation of North Carolina General Statutes §§ 20-71.4(a) (1993) and 20-348(a) (1993). Defendant filed an answer on 27 October 1992, denying plaintiff's principal allegations.

The action was tried before Judge Chester C. Davis and a jury from 22 January to 24 January 1994. The jury answered the issues as follows:

1. Was the 1986 Ford F150 pickup sold by Parks Chevrolet, Inc. to William Franklin Payne, Jr. damaged prior to such sale to the extent that the cost of repairing such vehicle exceeded twenty-five (25) percent of its fair market retail value?

Yes _Yes_

No _____

2. If so, did the defendant Parks Chevrolet know or should it reasonably have known that the vehicle had been damaged to such extent?

Yes _Yes_

No _____

3. If so, did the defendant Parks Chevrolet act with such gross negligence or recklessness in its dealings with plaintiff as to indicate an intent to defraud him?

Yes _Yes_

No _____

4. If so, what amount of damage, if any, has the plaintiff William Franklin Payne, Jr. sustained as a result of the defendant's failure to disclose the damage to the vehicle to him?

$7,000.00 + court cost

Defendant filed motions for judgment notwithstanding the verdict, a new trial, and remittitur on 3 March 1994. The trial court denied the motions.

## PAYNE v. PARKS CHEVROLET, INC.

[119 N.C. App. 383 (1995)]

Defendant sold to plaintiff a 1986 Ford F150 with four-wheel drive. The truck's DMV title history shows that the truck's first owner was Green Ford, Inc., in Greensboro. Green Ford sold the truck new to William and Doris Nelson of Greensboro in October 1985. The Nelsons sold the truck back to Green Ford in March 1987 with mileage of 4,554; and Green Ford immediately resold the truck to Fred H. Grubb of High Point. Mr. Grubb sold the truck, with mileage of 18,504, to Hodge Motor Co. in Archdale, North Carolina in December 1987; and Hodge immediately resold the truck to D.D.S. & M. Auto Sales in Sophia, North Carolina.

D.D.S. & M. sold the truck, mileage 19,872, to Matthew S. Cain of Trinity in June 1988 for $6,630.00. Cain used the truck for everyday driving and to pull a trailer and a race car on trips that averaged 30 to 60 miles one way. He had no major difficulties with the truck, but he did replace the front springs and the clutch, reline the brakes, align the wheels, and chain the transfer to the frame because the shift lever moved when he pulled a heavy load. Eventually, Cain sold the truck because it did not have enough power for pulling his trailer.

Mr. Cain sold the truck to defendant, with mileage of 55,862, in November 1990. Mr. Cain told defendant's salesman he had one minor accident with the truck that damaged a headlight and the left front fender and cost $250.00-300.00 to repair. Mr. Cain also told the salesman he had bought the truck from a man (D.D.S. & M. Motors) who bought wrecked vehicles and resold them. The salesman asked Mr. Cain if he knew whether, before he bought the truck, it had been in a collision that had caused over 25% damage; Mr. Cain said he had no idea. Mr. Cain then signed a form Damage Disclosure Statement that to the best of his knowledge, the truck had not "been damaged by collision or other occurrence to the extent that damages exceed 25% of its value at the time of the collision or other occurrence." Defendant's salesman testified that he saw nothing about the truck that led him to believe it had been substantially damaged before November 1990.

Defendant presented evidence that it routinely inspected all vehicles, like this truck, that it intended to resell at retail; and that defendant's body shop had no record of making any repairs on Mr. Cain's truck.

Defendant sold the truck to plaintiff, without a warranty, in December 1990 for about $7,000.00. Defendant's salesman told plaintiff that defendant's mechanics had checked out the truck and it worked fine. Defendant did not give plaintiff a Damage Disclosure

Statement and did not say anything to plaintiff about the truck being in a prior accident.

Plaintiff drove the truck for about a year, to about 71,000 miles. The U-joint fell out and the transfer case began leaking in the first week. The truck always pulled to the right. In May 1992, a body shop inspected the truck and found multiple serious problems with the frame and related parts. The shop manager opined at trial that the truck's condition was caused by an accident and that an experienced mechanic would have seen the damage on inspection. The manager testified that it would have cost $2,711.60, in May 1992, to make the frame like new and that other repairs were necessary.

Plaintiff and his father testified that, at the time of the trial, the truck was unsafe to drive (and had not been driven since March 1992), but had parts with a value of $2,000.00.

Defendant argues that the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict because plaintiff failed to present a prima facie case that defendant had violated North Carolina General Statutes §§ 20-71.4(a) and 20-348(a). We disagree.

In accordance with Rule 50, if the evidence considered in the light most favorable to plaintiff is sufficient, it is a matter for the jury. *Meacham v. Board of Education*, 59 N.C. App. 381, 297 S.E.2d 192 (1982), *disc. review denied*, 307 N.C. 577, 299 S.E.2d 651 (1983). North Carolina General Statutes § 20-71.4 provides that:

(a) It shall be unlawful and constitute a misdemeanor for any transferor who knows *or reasonably should know* that a motor vehicle has been involved in a collision or other occurrence to the extent that the cost of repairing that vehicle exceeds twenty-five percent (25%) of its fair market retail value, or that the motor vehicle is, or was, a flood vehicle, a reconstructed vehicle, or a salvage motor vehicle, to fail to disclose that fact in writing to the transferee prior to transfer of any vehicle up to five model years old. Failure to disclose any of the above information will also result in civil liability under G.S. 20-348. The Commissioner may prepare forms to carry out the provisions of this section. (Emphasis added.)

This statute was amended effective 1 January 1995 with minor changes. The instant action is the first case to construe this statute.

PAYNE v. PARKS CHEVROLET, INC.

[119 N.C. App. 383 (1995)]

North Carolina General Statutes § 20-348(a) provides:

(a) Any person who, with intent to defraud, violates any requirement imposed under this Article shall be liable in an amount equal to the sum of:

> (1) Three times the amount of actual damages sustained or one thousand five hundred dollars ($1,500), whichever is the greater; and

> (2) In the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

(b) An action to enforce any liability created under subsection (a) of this section may be brought in any court of the trial division of the General Court of Justice of the State of North Carolina within four years from the date on which the liability arises.

Plaintiff was required to show that: (1) defendant was a transferor, (2) who knew or reasonably should have known that the 1986 Ford F150 motor vehicle had been involved in a collision or other occurrence to the extent that the cost of repair exceeded 25% of its fair market value, and (3) who failed to disclose that fact in writing to plaintiff prior to the transfer, and that the vehicle at the time of transfer (4) was not a vehicle more than five model years old. The evidence reveals that plaintiff has met these requirements. Defendant acknowledged that it was a transferor, that it made no written disclosure to plaintiff, and that the 1986 Ford truck was under five model years old. Defendant argues, however, that plaintiff failed to sufficiently prove that defendant knew or reasonably should have known that the truck had been involved in a collision or other occurrence so that the cost of repair exceeded 25% of the fair market value. This argument is without merit.

Appellate review of a decision of the trial court is to determine whether the evidence, taken in the light most favorable to the nonmoving party, is sufficient as a matter of law to be submitted to the jury. *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 411 S.E.2d 133 (1991). Evidence of defendant's knowledge, taken in the light most favorable to plaintiff shows that: Matthew Cain, the owner before plaintiff, testified that he had a wreck in the truck and that he had bought it from a seller of wrecked vehicles; that he informed Robert Pegg, defendant's employee of these facts when he transferred the truck to defendant; that he did not know whether the cost of repair to the truck

exceeded twenty-five percent of its retail value, and that he told Mr. Pegg he did not know when Mr. Pegg presented him with a Damage Disclosure Statement; and that Mr. Pegg told him if he did not know for sure to sign the statement.

Other evidence offered by defendant's body shop manager, Eugene Smith, was that all vehicles which defendant took in trade with the intent to resell were inspected for damage. Plaintiff's witness, Michael Livengood, testified that an experienced mechanic would have seen the damage on inspection. Plaintiff also presented evidence that the cost of repair was $2,711.60. Defendant presented no evidence as to cost of repair. Evidence presented at trial showed the retail value of the truck varied from $3,500.00 (the estimate placed on the value of the vehicle by defendant at the time defendant acquired it) to $7,000.00, the price paid by plaintiff. The repair costs of $2,711.60 exceeded twenty-five percent of the truck's retail value of $1,750.00, if the truck were valued at $7,000.00.

Defendant's argument that it had no duty to investigate and inform the buyer of the vehicle's history under *Ramsey v. Keever's Used Cars*, 92 N.C. App. 187, 374 S.E.2d 135 (1988) does not excuse defendant because it reasonably should have known of the extent of damages to the vehicle.

This Court in an analogous case, *Levine v. Parks Chevrolet, Inc.*, 76 N.C. App. 44, 50, 331 S.E.2d 747, 750, *disc. review denied*, 315 N.C. 184, 337 S.E.2d 858 (1985) (*quoting Nieto v. Pence*, 578 F.2d 640, 642 (5th Cir. 1978)), stated:

We hold that a transferor who lacked actual knowledge may still be found to have intended to defraud and thus may be civilly liable for a failure to disclose that a vehicle's actual mileage is unknown. A transferor may not close his eyes to the truth. If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood that risk of such an occurrence.

This Court in *Levine* found that defendant's mechanics had ignored several signs of wear on the vehicle which indicated the correct mileage of the car. Likewise, defendant in the case *sub judice* may not ignore statements made by the previous owner, the signs of damage to the truck, and its failure to provide a Damage Disclosure Statement

to plaintiff. Thus, defendant was either grossly negligent or recklessly disregarded indications made by the previous owner.

For the foregoing reasons, the evidence presented was sufficient to allow a jury to find that defendant knew or *reasonably should have known* of damage to the vehicle which exceeded twenty-five percent (25%) of the vehicle's fair market value.

Defendant's final argument is that the trial court erred in denying defendant's motion for a new trial because the jury's award of damages was so excessive as to manifest a disregard of the court's instructions and was insufficient to justify the verdict. North Carolina General Statutes § 20-348(a) references actual damages and the jury awarded actual damages, the price plaintiff paid for the truck, and the trial court in its discretion allowed the award to stand. As defendant has failed to show a manifest abuse of discretion on the part of the trial court, his argument fails; therefore, the trial court's judgment and order is affirmed.

Affirmed.

Judges GREENE and MARTIN, JOHN C. concur.