William and Shelby CREWS, Plaintiffs,

v.

ALTAVISTA MOTORS, INC. and First National Bank of Altavista, Defendants.

No. CIV. A. 6:99CV40007.

United States District Court, W.D. Virginia, Lynchburg Division.

Sept. 7, 1999.

Elmer Woodard, Danville, VA, for William and Shelby Crews Plaintiffs.

Leighton S. Houck, Caskie & Frost, Lynchburg, VA, James P. Kent, Jr., Kent & Kent, Altavista, VA, for the First National Bank of Altavista.

### ORDER

MOON, District Judge.

William and Shelby Crews filed this action against both Altavista Motors, Inc. and First National Bank of Altavista ("First National"), alleging violations of the Truth in Lending Act, 15 U.S.C.

§ 1601, *et seq.*, and the Virginia Consumer Protection Act, Va. Stat. § 59.1–196, *et seq.* Plaintiffs also alleged common-law fraud. Defendant First National filed a second motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Altavista Motors did not join in First National's motion. For the reasons set forth in the attached Opinion, defendant's motion is GRANTED with respect to First National.

The Clerk is hereby directed to send a certified copy of this Order and the attached opinion to all counsel of record.

## OPINION

Defendant First National Bank of Altavista ("Altavista Bank") filed a second motion to dismiss in response to plaintiffs' first amended complaint. Altavista Bank filed its motion claiming that plaintiffs failed to state a claim upon which relief may be granted pursuant to Fed. R. Civ. Pro. 12(b)(6). For the reasons stated below, defendant's motion to dismiss is granted as the Court finds that plaintiffs' complaint fails to state a claim upon which relief may be granted.

## MOTION TO DISMISS STANDARD

When considering a motion to dismiss under Rule 12(b)(6), this court must consider all facts and reasonable inferences which may be drawn from the face of the plaintiffs' complaint to determine whether all of the required elements of the cause of action are present. *Oram v. Dalton,* 927 F.Supp. 180, 184 (E.D.Va.1996) (citing *Wolman v. Tose,* 467 F.2d 29, 33 n. 5 (4th Cir.1972)). This means that all factual allegations in the plaintiffs' complaint must be accepted as true, *Estate Constr. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 217–18 (4th Cir.1994), and should be construed liberally. *Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991). The Court may not dismiss the complaint unless it is apparent that the plaintiffs would not be entitled to relief. *Id.*

## FACTS

On November 25, 1998, Plaintiffs William Crews and Shelby Crews verbally agreed to purchase a 1998 Dodge truck from Altavista Motors, Inc. for the sticker price of $25,290. To pay for the truck, plaintiffs traded-in a car for which Altavista Motors agreed to pay $13,200. Altavista Motors actually paid $13,076.72, leaving the Plaintiffs with an equity of $123.28.

Altavista Motors then presented the plaintiffs with a Buyer's Order. However, by that time the price of the car had jumped to $27,899. The plaintiffs objected, and Altavista Motors responded that the payoff was approximately $2,000 more than Altavista had represented on the Buyer's Order, thus accounting for the price jump. Accordingly, the plaintiffs signed the Buyers Order.

Altavista Motors agreed to finance the purchase via a Retail Installment Sales Contract ("RISC"). The amount financed was $28,726.66, the finance charge on the RISC was $9,643.58, and the annual percentage rate was 9.9%. Altavista Motors also agreed to give the plaintiffs a $500 check as a "cheerful customer satisfaction rebate." Five days later, the plaintiffs attempted to pick up the check. However, Altavista Motors informed the plaintiffs that they would release the check only if they signed certain papers that actually constituted a new Buyer's Order and RISC. The new Buyer's Order, which was signed by the plaintiffs, reduced the sticker price of the truck by $199 and increased the value of the traded-in car by $521.69. Accordingly, the balance due upon delivery declined. However, while the amount financed fell, the annual percentage rate increased such that any initial savings plaintiffs realized in the new Buyer's Order were more than offset by increases in the finance charges in the new RISC. The overall "loss" to the Plaintiffs was approximately $800.[1]

---

1. In their amended complaint, plaintiffs also allege losses due to a backdating of the second RISC and the higher price ultimately

paid for the truck compared to the truck's original sticker price.

Plaintiffs brought an action against Altavista Motors, alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and the Virginia Consumer Protection Act, Va. Stat. § 59.1–196, *et seq.* Plaintiffs also allege actual fraud on behalf of Altavista Motors. Moreover, plaintiffs have joined Altavista Bank, the current holder of the note, and have sought to hold them liable for all of Altavista Motors' violations except those involving the Truth in Lending Act. Finally, plaintiffs seek actual, statutory, and punitive damages against both Altavista Motors and Altavista Bank.

## DISCUSSION

 The contract between plaintiffs and Altavista Motors conspicuously contained the following provision:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

This provision, mandated by the Federal Trade Commission ("FTC")[2] and commonly known as the "FTC Holder Rule," must be included in all RISCs. Prior to the rule's adoption, a creditor could avail itself of its holder-in-due-course status. By cutting-off that status, the rule preserves consumer claims and defenses. *See Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759, 763 (N.D.Ill.1996); *Ford Motor Credit Co. v. Morgan*, 404 Mass. 537, 536 N.E.2d 587, 589 (1989). Thus, the rule acts as a shield for consumers, protecting them from creditors by allowing non-payment when a seller has defrauded the consumer in some way.

However, the Holder Rule shield can also be used as a sword. The language of the rule specifically states that a creditor is subject to all claims and defenses that the debtor could assert against the seller. The question facing this Court is under what circumstances can the Holder Rule be used affirmatively against a creditor. In its explanation of the Holder Rule's scope, the FTC specifically noted that "a consumer can ... maintain an affirmative action against a creditor who has received payments for a return of monies paid on account." 40 Fed.Reg. 53,505, 53,524 (1975). However, the FTC continued by stating that such relief "will only be available where a seller's breach is so substantial that a court is persuaded that rescission and restitution are justified." *Id.* In explaining the situations in which it felt such recovery is justified, the FTC stated:

> Consumers will not be in a position to obtain an affirmative recovery from a creditor unless they have actually commenced payments and received little or nothing of value from the seller. In a case of non-delivery, total failure of performance, or the like, we believe that the consumer is entitled to a refund of monies paid on account.

*Id.* at 53,527.

Most courts have followed the lead of the FTC. *See Mount*, 926 F.Supp. at 764 ("a consumer may successfully maintain an action against an assignee-creditor for any sums paid on account if a breach of warranty on the seller's part warrants rescission of the sales contract under the applicable state law"); *Ford Motor Credit*, 536 N.E.2d at 589–90 ("Thus, the function of the rule is to allow consumers to stop payments, and, in limited circumstances ... where equity requires, to provide for a return of monies paid. The FTC did not intend that the rule would, as a matter of course, entitle a consumer to a full refund of monies paid on account."); *Hillsborough Holdings Corp. v. Adams (In re Hillsborough Holdings Corp.)*, 146 B.R. 1015, 1020–21 (Bankr.M.D.Fla.1992) ("most cases hold that, absent a showing that the Claimants received little or nothing of val-

---

2. *See* 16 C.F.R. § 433.2.

ue, the Homeowners are not entitled to an affirmative recovery of amounts paid pursuant to their respective Home Purchase Agreements"); *Felde v. Chrysler Credit Corp.,* 219 Ill.App.3d 530, 162 Ill.Dec. 565, 580 N.E.2d 191, 196 (1991) ("Such relief was only intended to be available if the seller's breach was so substantial that rescission and restitution were justified under applicable state law principles."). In other words, a consumer may assert a claim against a creditor under the Holder Rule when "the seller's breach is so substantial that a court is persuaded rescission and restitution are justified." *Boggess v. Lewis Raines Motors, Inc.,* 20 F.Supp.2d 979, 982 (S.D.W.Va.1998) (fraudulent misrepresentation of odometer mileage by 100,000 miles constitutes a sufficient violation of Odometer Act to justify rescission, restitution, and potential liability for creditor under the Holder Rule).

 In this case, plaintiffs do not seek rescission of the contract. Moreover, plaintiffs do not argue that their 1998 Dodge truck is of little or no value. Instead, plaintiffs have kept the truck and continue to use it. Even if this Court were to adopt a more lenient position espoused by several commentators (including those cited by the plaintiffs), relief still would not be justified. Under this more relaxed standard, the FTC guidelines "simply make the obvious practical point that consumers will only recover affirmatively where their claims are serious enough to exceed the remainder of the debt owed." Jonathan Sheldon and Carolyn L. Carter, National Consumer Law Center, Unfair and Deceptive Acts and Practices § 6.6.3.3.2 (4th ed.1997). However, that standard still would not grant plaintiffs the relief they request. There is no evidence that plaintiffs claims are so large that they wipe out the remainder of any debt, *see id.,* since the alleged actual losses to the plaintiffs are very modest for a truck purchased less than one year ago for over $27,000.

Finally, any aggregation of statutory and punitive claims against Altavista Bank would be inappropriate here. As noted above, the purpose of the Holder Rule is to provide both a shield and a (small) sword to consumers, thus enabling them with a level of self-protection against creditor claims that they would not otherwise have. The Holder Rule was not designed to act as a weapon to exact statutory and punitive damages against otherwise innocent creditors. Independently, punitive damages against Altavista Bank would be inappropriate, as there are no allegations of wrongdoing on behalf of the bank.

### CONCLUSION

Having found that the plaintiff has failed to state a claim upon which relief can be granted against Altavista Bank, this case is DISMISSED with respect to that defendant. It is so ORDERED.