**Keith COMER, Plaintiff,**

v.

**PERSON AUTO SALES, INC.,
and Wachovia Bank, N.A.,
Defendants.**

**No. 1:03CV00510.**

United States District Court,
M.D. North Carolina.

Feb. 2, 2005.

Harding Kent Crowe, Conover, NC, Elmer Woodard, Danville, VA, for Plaintiff.

Joseph P. Gram, Polly D. Sizemore, Greensboro, NC, for Defendants.

## ORDER

DIXON, United States Magistrate Judge.

This matter is before the court on Plaintiff's motion for partial summary judgment, docket no. 26, Defendants' (Person and Wachovia) motion for summary judgment, docket no. 28, and Plaintiff's motion to strike portions of Defendant Person's evidence, docket no. 35. A response has been filed in each of these motions, and a reply has been filed in both summary judgment motions. The parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). In this posture, this case is ripe for disposition.

## I. Background

This action centers on Plaintiff's purchase of a used 2001 Ford Explorer Sport Trac ("the truck") from Defendant Person Auto Sales, Inc. ("Person") in Roxboro within this judicial district. Plaintiff financed most of the truck's purchase price through a credit contract with Person, and Person then assigned the credit contract to Defendant Wachovia Bank, N.A. (Wachovia). Plaintiff claims that the vehicle was damaged at the time he bought it, a fact not disclosed to him at the time, and in this action he asserts claims for violation of the Truth in Lending Act (Count I), Actual Fraud (Count II), violations of what Plaintiff has titled as the "North Carolina Consumer Protection Act" (Count III) (here Plaintiff is bringing a claim under the Unfair and Deceptive Trade Practices Act (UDTPA), N.C. GEN. STAT. § 75–1.1), and violations of N.C. GEN. STAT. § 20–303(b) (Count IV). All counts are filed against Person; all counts except Count I are also filed against Wachovia. Jurisdiction is based, in part, on diversity of citizenship as Plaintiff is a citizen and resident of Virginia.

Person bought the truck in question from AAA Sales and Leasing (AAA), through the Greensboro Auto Auction (GAA), on June 26, 2002. According to the invoice provided by GAA and signed by a representative of Person, the truck was sold with the "announced condition" of "frame damage." Bill of Sale and Title Warranty, Ex. H (attached to docket no. 27). Person essentially argues that al-

though it was aware that there was "frame damage," it was unaware of the extent of damage about which Plaintiff is now complaining, and that it was unaware that the truck had actually been wrecked. *See, e.g.,* Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J., p. 5 (docket no. 32) ("Person Auto Sales knew that the vehicle had frame damage of some type. However, the extent and significance of that damage is a factual issue."). Facts about the extent of Person's knowledge and the representations it made to Plaintiff are in dispute.

One important factor in the question about Person's knowledge is the information provided by the GAA. Person claims that it bought the truck at the auction under a "green light." Br. in Supp. of Defs.' Mot. for Summ. J., p. 4 (docket no. 29). This "green light" is a code used by the GAA representing that a vehicle is "ride and drive," which means that it is "mechanically fine." Dep. of Gary Thomas Osborne, Greensboro Auto Auction Inc., Ex. F, p. 39 (attached to docket no. 27). Osborne indicates that "you can still sell it on a green light with frame damage," *id.* at 39, but that if—as is indicated on the invoice for this particular truck—there is frame damage, a "yellow light" would have been on it too, *id.* at 46. A "yellow light" means that "something has been announced on that vehicle," "that there is a specified defect on the car." *Id.* at 41. Person does not admit that there was a yellow light signal for this truck.

Whether or not there was a yellow light signal for this truck, Person did not investigate whether the truck had any frame damage. "We did nothing. . . . We had no reason to." Dep. of Marcus Jordan, Person Auto Sales, Attach. J, p. 96 (attached to docket no. 31). Person claims that the truck was driven by an employee and given a safety inspection as required by North Carolina law, however, and that

there was no indication that anything was amiss. Br. in Supp. of Defs.' Mot. for Summ. J., p. 5 (docket no. 29) (citing Dep. of Marcus D. Jordan, Person Auto Sales, Attach. 2, p. 82 (attached to docket no. 29)).

Plaintiff claims that, at the time of the purchase of the truck, he specifically asked whether the truck had ever been wrecked and whether there were any engine or transmission problems to worry about, and that Person's salesman, Tim Pleasant, told him "no." Pl.'s Mem., p. 4 (docket no. 31). Plaintiff also claims that manager Chad Sanford told him that the truck was in good shape and said that the truck had never been wrecked. *Id.* at 5. Sanford pointed out a damage disclosure on the title that guarantees that a vehicle has not been damaged by more than 25% of its value. Dep. of Keith Comer, Ex. K, p. 72 (attached to docket no. 31).

Nevertheless, while he was experiencing problems with the engine, Plaintiff discovered that the truck had been wrecked. Pl.'s Mem., p. 6 (docket no. 31). In fact, the GAA had been forced, after an arbitration, to buy the truck back from a previous buyer because of the frame damage. *See, e.g.,* Br. in Supp. of Defs.' Mot. for Summ. J., p. 4 (docket no. 29). Plaintiff claims that since he bought the truck, he has had to have the "chattering pulley" repaired, the mass airflow sensor repaired, has had three sets of tires, and has had to replace the brake shoes twice. Pl.'s Mem., p. 7 (docket no. 31).

Person maintains that Plaintiff was advised that the truck had not "been involved in an occurrence in which it was damaged in excess of 25% of its fair market retail value," that even now Plaintiff does not contend that the vehicle has sustained such damage, and that evidence regarding the accident and the damage complained of "was discovered by plaintiff's counsel after

filing this action." Br. in Opp'n to Pl.'s Mot. for Summ. J., pp. 3–4 (docket no. 32). Plaintiff claims that he has been injured in that "had [ ]he known that the truck had been mangled to this extent, he would not have even considered buying the truck, let alone paying over $23,000 for it." First Am. Compl., p. 8 (docket no. 10).

The circumstances surrounding Plaintiff's financing of this vehicle are also the subject of this litigation. Plaintiff claims that he told Sanford that he had only $350.00 for a down payment, and that he had no other cash available to put toward the purchase of a vehicle. Pl.'s Mem., p. 5 (docket no. 27). Plaintiff claims that, in response, Sanford told him that all taxes and title fees would be financed and that Plaintiff would not be required to pay additional cash to gain title to and register the car. *Id.*

Person used a Virginia title application for this transaction. Dep. of Marcus Jordan, Person Auto Sales, Ex. J, p. 40 (attached to docket no. 27) ("I know that— I'm almost positive that it is on a Virginia title application."). Nevertheless, Person calculated the sales tax for the truck according to the North Carolina highway use tax formula. Therefore, when Plaintiff tried to register his car in Virginia, he was required to pay an additional $324.75. Pl.'s Mem., p. 15 (docket no. 27). Person claims that this is standard procedure.

> [W]hen we go through the documents and we go through the amount of—if it's a Virginia customer—we go through the amount of tax and tags charged. We do tell the customer that that is calculated on a North Carolina basis—that's the way our computer program is set up— and that there will be differences in the—in the North Carolina to whatever state's tax rates and tag fees and title fees and stuff like that. So—I mean, we are very clear that there will be differences when you go to your local DMV.

> But the amount of money that we are collecting per the way our system is programmed will be forwarded to you in a check form made out to your state's Department of Motor Vehicles.

Dep. of Marcus Jordan, Person Auto Sales, Attach. 2, p. 70 (attached to docket no. 29). Person acknowledges that none of the documents associated with the sale explained this discrepancy in writing. *Id.* In his complaint, Plaintiff claims that he was injured by having to pay this difference between the North Carolina tax and the Virginia tax in cash rather than having it financed, and that he would not have agreed to buy the truck on these terms. First Am. Compl., p. 9 (docket no. 10).

## II. Standard of Review

*Summary Judgment Standard*

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. International Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires a trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th

Cir.1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.,* 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting). When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick,* 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 196 (4th Cir.1997).

### III. Discussion

Plaintiff has moved for summary judgment on Count I (the TILA claim) and Count III (the UDTPA claim). While Person has moved for summary judgment on the substance of each of these claims, Wachovia has moved for summary judgment solely based upon analysis of the FTC Holder Rule by which Plaintiff attempts to assign liability. Therefore, this court will discuss the summary judgment motions of Plaintiff and Person—based upon the merits of Plaintiff's claim—concurrently, and will address Wachovia's motion for summary judgment separately. This court notes, however, that the summary judgment motions of the two Defendants are filed as one pleading.

*Count I: Truth in Lending Act Violation*

In Count I, Plaintiff alleges violations of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 et seq., in connection with the retail installment sales contract (RISC) that he signed on July 12, 2002. Both Plaintiff and Person have moved for summary judgment on Count I. This court holds that summary judgment is appropriate for Person as to Count I.

The TILA was enacted to protect consumers in credit transactions. Congress stated that its purpose in creating TILA was "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him ... and to protect the consumer against inaccurate and unfair credit billing ... practices." 15 U.S.C. § 1601(a). Creditors must make specific disclosures as a part of the process of extending credit to customers. 15 U.S.C. § 1638(a). These disclosures include the amount financed, itemization of the amount financed, the total number of payments, finance charges, the annual percentage rate, and the identity of the creditor. *See id.* Courts are to construe the terms of the TILA broadly. *See, e.g., Nigh v. Koons Buick Pontiac GMC, Inc.,* 143 F.Supp.2d 535, 547 (E.D.Va.2001), *aff'd,* 319 F.3d 119 (4th Cir.2003), *overruled on other grounds by* — U.S. —, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004).

■ The Fourth Circuit has held that "[t]o insure that the consumer is protected, as Congress envisioned, requires that the provisions of [TILA] and the regulations implementing it be absolutely complied with and strictly enforced." *Mars v. Spartanburg Chrysler Plymouth, Inc.,* 713 F.2d 65, 67 (4th Cir.1983). Any failure to accurately make the required disclosures under TILA, and according to the accompanying Regulation Z, results in a technical violation requiring no proof of deception or actual damages to obtain its statutory remedies. *See id.; Walker v. College Toyota, Inc.,* 399 F.Supp. 778 (W.D.Va.1974).

Plaintiff argues in support of his motion for summary judgment that Person violated TILA by failing to accurately disclose the amount financed and the schedule of payments because the amount financed did not include the entire tax that was due to the state of Virginia. Pl.'s Mem., pp. 16–18 (docket no. 27). Further, in response to a statement in a sworn affidavit by Sandford that indicated that the sales tax was an "estimate," Plaintiff argues that Person

has violated 12 C.F.R. § 226.17(c)-(2)(i) (Regulation Z). Regulation Z requires that "[i]f any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate." *Id.* This court finds both arguments to be without merit.

■ As an initial matter, this court finds that when taxes on a vehicle *are* financed by a dealership, those taxes are subject to TILA. *See Nigh*, 143 F.Supp.2d at 555 ("The accuracy of sales tax disclosures are governed by TILA."). Nevertheless, this court also finds that the particular taxes in dispute here are not covered by TILA. The very nature of Plaintiff's complaint about these taxes removes them from the governance of TILA.

■ Plaintiff complains because the extra $324.74 in taxes that he was required by the state of Virginia to pay upon registration were not financed with the rest of his expenses when he purchased the truck from Person. For the very reason that this amount was not financed as Plaintiff wished, or even had been promised, these taxes are not covered by TILA. Plaintiff does not complain that there was a mistake, technical or not, in the disclosures to Plaintiff about what was actually financed. The amount financed for Plaintiff's taxes may have been an estimate of the total taxes he would owe, but it was not an estimate that affected the amount financed. Only those expenses which were disclosed were financed. Therefore, summary judgment will be granted to Person on the substance of this claim.

## Count II: Actual Fraud

In Count II, Plaintiff alleges *actual fraud regarding both taxes and frame damage* on the truck he purchased from Person. Plaintiff alleges *actual fraud in that Person knew or should have known that the truck had sustained significant damage* at the time that representatives of the dealership told Plaintiff that the truck had not been wrecked. This is a fraud claim based both upon justified reliance on false representation and upon non-disclosure. Plaintiff also alleges *actual fraud in that Person knew or should have known that the amount of sales tax* that it "represented" was less than what Plaintiff actually had to pay. This is a fraud claim based upon justified reliance on false representation. Only Person has moved for summary judgment on these claims. This court holds that summary judgment is appropriate for Person as to the tax issue raised in Count II, but inappropriate for Person as to the truck damage issue raised in Count II.

■ Plaintiff's actual fraud claims are state law claims. In North Carolina, in order to establish a fraud claim in general, Plaintiff must show: (1) false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which does in fact deceive; (5) resulting in damage to the injured party. *See Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568–69, 374 S.E.2d 385, 391 (1988) (indicating that although "fraud has no all-embracing definition and is better left undefined lest crafty men find a way of committing fraud which avoids the definition" these "essential elements of actionable fraud are well established").

The requisite showings establishing either a false representation or a concealment of material fact ("failure to disclose") are almost identical. The language, however, is different depending on the claim being made. Because of the dual nature of Plaintiff's fraud claim, both sets of language are significant in the case at hand.

■ In order to establish a fraud claim based upon false representation, a plaintiff must establish reasonable reliance. *Johnson v. Owens,* 263 N.C. 754, 140 S.E.2d 311 (1965); *C.F.R. Foods, Inc. v. Randolph Dev. Co.,* 107 N.C.App. 584, 421 S.E.2d 386 (1992). "The policy of the courts is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest." *Johnson,* 263 N.C. at 757, 140 S.E.2d at 313 (quoting *Calloway v. Wyatt,* 246 N.C. 129, 97 S.E.2d 881 (1957) (a case in which the complaint was fatally defective)). "Just where reliance ceases to be reasonable and becomes such negligence and inattention that it will, as a matter of law, bar recovery for fraud is frequently very difficult to determine." *Johnson,* 263 N.C. at 758, 140 S.E.2d at 314. The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion. *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP,* 350 N.C. 214, 513 S.E.2d 320 (1999); *see also Johnson,* 263 N.C. at 758, 140 S.E.2d at 314.

■ In order to establish a fraud claim based upon failure to disclose, a plaintiff must establish a duty to disclose. *Everts v. Parkinson,* 147 N.C.App. 315, 325, 555 S.E.2d 667, 674 (2001) (stating that where the claim for fraud is based upon a failure to disclose, the reasonable reliance requirement is unnecessary because it is almost identical to what is required to show a duty to disclose). There is a duty to disclose "[w]here material facts are accessible to the vendor only, and he knows them not to be within the reach of the diligent attention, observation and judgment of the purchaser." *Everts,* 147 N.C.App. at 325, 555 S.E.2d at 674. A duty to disclose is to be found by a jury. *See, e.g., id.*

■ There is evidence favoring Plaintiff on the claim that the amount of taxes he owed was misrepresented by Person, but this evidence is not enough for Plaintiff to survive summary judgment on this claim. In seeking a summary judgment on this issue, Person argues 1) that Mr. Sanford's sworn affidavit demonstrates that the tax calculation was an estimate; 2) that the amount of taxes in question could not have been reasonably relied upon as a factor in purchasing the truck; and 3) that Plaintiff cannot establish that he has been damaged. Defs.' Mot. for Summ. J., p. 15 (docket no. 29). To the contrary, Plaintiff asserts that he bought the truck after he said that he did not have the money to pay the Virginia taxes out of pocket and he was told that all the expenses would be financed. Plaintiff has presented evidence that the taxes financed by Person were not sufficient to cover the taxes that he owed to Virginia, and that he did not have the cash to pay for these taxes upon his attempt to register and gain title to his new truck.

Nevertheless, Plaintiff has failed entirely to present evidence of damages to himself caused by the circumstances by which he was required to fulfill his obligation to pay Virginia taxes with a cash payment rather than with a financed payment. Even if Plaintiff demonstrates all of the other elements of actual fraud on this claim, if he cannot provide evidence of damages, he cannot survive summary judgment. Plaintiff makes clear that he did not have the money to make a cash payment to the Virginia DMV, and that he had to turn to his father-in-law for assistance in meeting this obligation. Perhaps, as Plaintiff argues, this situation was inconvenient for him, and the timing by which he was required to make a full payment for the taxes (immediately rather than over a period of time) posed a significant burden. Yet no damages have been shown. Plaintiff did not incur any additional expenses, that is, he was not forced

to finance this additional payment thereby incurring more interest charges; and he did not incur charges by foregoing the payment of other bills. There is simply no evidence that Plaintiff incurred any expenses that he did not actually owe, thus no evidence of damages has been presented. Therefore, this court will grant summary judgment to Person on this issue.

■ There is, however, sufficient evidence favoring Plaintiff for a fact-finder to return a verdict in his favor on the claim that Person both failed to disclose damage to the truck, and fraudulently misrepresented that it was in good condition. In seeking a summary judgment on this damage issue, Person argues that 1) Plaintiff cannot establish the requisite intent to deceive; and 2) Plaintiff cannot produce sufficient evidence of reasonable reliance or a duty to disclose by Person. Defs.' Mot. for Summ. J., pp. 11–14 (docket no. 29). To the contrary, Plaintiff asserts many facts from which a jury could infer intent to deceive, reasonable reliance, and a duty to disclose (as well as the other required elements): It is disputed whether Person knew or should have known about the extent of the frame damage; it is not clear whether the truck was sold to Person under a yellow or green light; it is not clear whether someone from Person specifically told Plaintiff that the truck had never been wrecked; it is not clear that knowing there is some frame damage also demonstrates knowledge of a wreck; and it is not clear whether Person adequately inspected the truck according to the knowledge it (or its employees) had. Whether the requisite elements have been sufficiently established, and whether Plaintiff's reliance on Person's assessment of the vehicle's condition was reasonable, are questions for the jury. This court cannot grant summary judgment to Person on this issue.

### Count III: Unfair and Deceptive Trade Practices

In Count III, Plaintiff alleges violations of the "North Carolina Consumer Protection Act." Although Plaintiff never refers specifically to North Carolina's prohibition against unfair and deceptive trade practices, N.C. GEN. STAT. § 75–1.1, it is clear from the pleadings that Plaintiff intends to sue under this Act, the UDTPA. As in his actual fraud claims, Plaintiff claims false representation and concealment (failure to disclose) regarding the frame damage to the truck, and false representation of the amount of sales tax that he would owe on the truck. Both Plaintiff and Person have moved for summary judgment on these claims. This court holds that summary judgment is appropriate for Person as to the tax issue raised in Count III, but inappropriate for either Person or Plaintiff as to the truck damage issue raised in Count III.

■ As an initial matter, this court notes that proof of actual fraud, as claimed in Count II, constitutes a violation of the UDTPA. *Hardy v. Toler,* 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975). The opposite is not always true, however, as the proof required for unfair and deceptive trade practices is not as rigorous as the proof required for actual fraud. *Id.* This court highlights the possibility that a jury could fail to find facts supporting actual fraud and still find for Plaintiff under the UDTPA.

N.C. GEN. STAT. § 75–1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." This language is "reproduced verbatim from Federal Trade Commission Act (FTCA), 15 U.S.C. § 45(a)(1)(1973)." *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 48 (4th Cir.1983). Nevertheless, the state

act (the UDTPA) provides a private right of action, and in so doing, differs from the federal act (the FTCA). *Marshall v. Miller,* 302 N.C. 539, 543, 276 S.E.2d 397, 400 (1981) (holding that "the Legislature intended trebling of any damages assessed to be automatic once a violation is shown" and providing a history of the adoption of the UDTPA).

In order to prevail in an UDTPA claim, a plaintiff must show: "(1) an unfair or deceptive act or practice ..., (2) in or affecting commerce, (3) which proximately caused actual injury to plaintiff or to his business." *Huff v. Autos Unlimited, Inc.,* 124 N.C.App. 410, 413, 477 S.E.2d 86, 88 (1996) (quoting *Spartan Leasing, Inc. v. Pollard,* 101 N.C.App. 450, 461, 400 S.E.2d 476, 482 (1991)). The jury must decide any factual issues, including whether the allegedly deceptive act proximately caused injury to Plaintiff. *See Hageman v. Twin City Chrysler–Plymouth Inc.,* 681 F.Supp. 303, 306 (M.D.N.C.1988). The court will then determine as a matter of law whether the proved facts amount to a violation of the statute. *See id.; CF Indus., Inc. v. Transcontinental Gas Pipe Line Corp.,* 448 F.Supp. 475, 485 (W.D.N.C.1978); *Hardy,* 288 N.C. at 310, 218 S.E.2d at 346–47. The requirement that the act or practice be "in or affecting commerce" is not at issue in this case.

In North Carolina, it is a violation of the UDTPA for an employee of an auto dealership to make a statement to a customer leading the customer to believe that a vehicle has not been wrecked when the employee knows, to the contrary, that the vehicle has been wrecked. *See Torrance v. AS & L Motors, Ltd.,* 119 N.C.App. 552, 459 S.E.2d 67 (1995). Likewise, it is a violation of the UDTPA to falsely represent to a customer that a vehicle is in good mechanical and serviceable condition. *See Morris v. Bailey,* 86 N.C.App. 378, 358 S.E.2d 120 (1987); *Huff,*

124 N.C.App. 410, 477 S.E.2d 86. Further, a dealership has a duty to investigate the condition of a car if there are signs by which it reasonably should know of damage to the vehicle. *Payne v. Parks Chevrolet, Inc.,* 119 N.C.App. 383, 458 S.E.2d 716 (1995). Nevertheless, an auto dealership is not required to conduct a complete title search of a used vehicle in order to adequately apprise a customer of the car's condition. *Ramsey v. Keever's Used Cars,* 92 N.C.App. 187, 374 S.E.2d 135 (1988). This case law clearly demonstrates that Person's duty to Plaintiff is based upon what it knew or should have known about the damage to the truck.

This court found that Plaintiff had not demonstrated damage sufficient to satisfy the elements of actual fraud on the issue of false representation of taxes owed. *See* discussion *supra* pp. 486–87. For the same reasons, this court also finds that Plaintiff has not demonstrated actual injury sufficient to satisfy the elements of a UDTPA claim on the taxes claim. There is, however, sufficient evidence favoring Plaintiff for a fact-finder to return a verdict in his favor on the claim that Defendant engaged in deceptive trade practices by falsely representing that the truck had never been wrecked and by failing to disclose the frame damage. *See* discussion *supra* p. 487. This court cannot grant summary judgment on this issue for either party.

Finally, this court notes that Plaintiff is asking for the treble damages provided by statute as if they were punitive damages requiring a showing of bad faith. This is a misreading of the law. The North Carolina Supreme Court made it clear over two decades ago, in *Marshall,* that treble damages are awarded automatically upon a court's finding of a Chapter 75 violation ("Appellants contend, and Judge Parker agreed, that the language

requires a showing of bad faith in order for a party to recover treble damages. We do not agree . . . ." *Marshall*, 302 N.C. at 545, 276 S.E.2d at 401.). The *Marshall* court indicated that these damages are *not* punitive damages—which do require a showing of bad faith, but are, instead, a sort of hybrid. *Id.* at 546, 276 S.E.2d at 402. Finally, the *Marshall* court concluded that "the Legislature intended trebling of any damages assessed to be automatic once a violation is shown." *Id.* at 547, 276 S.E.2d at 402. Nevertheless, it is not within the purview of this court to consider damages at this juncture.

*Count IV: N.C. GEN. STAT. § 20–303*

██ In Count IV, Plaintiff alleges violation of N.C. GEN. STAT. § 20–303 by fraudulent disclosure of the terms of an installment sale. First Am. Compl., p. 12 (docket no. 10). N.C. GEN. STAT. § 20–303 requires:

(a) Every retail installment sale shall be evidenced by an instrument in writing, which shall contain all the agreements of the parties and shall be signed by the buyer.

(b) Prior to or about the time of the delivery of the motor vehicle, the seller shall deliver to the buyer a written statement describing clearly the motor vehicle sold to the buyer, the cash sale price thereof, the cash paid down by the buyer, the amount credited the buyer for any trade-in and a description of the motor vehicle traded, the amount of the finance charge, the amount of any other charge specifying its purpose, the net balance due from the buyer, the terms of the payment of such net balance and a summary of any insurance protection to be effected.

N.C. GEN. STAT. § 20–303. This court notes, although neither of the parties do, that civil actions under Article 12 are limited to "any matter not within the jurisdiction of the Commissioner or that seeks relief wholly outside the authority or jurisdiction of the Commissioner to award." N.C. GEN. STAT. § 20–308.1. Neither party has shown that this court has jurisdiction over this Article 12 claim, and neither party has demonstrated the treatment of N.C. GEN. STAT. § 20–303 by North Carolina state courts. This court will not, at such a juncture, merely create North Carolina law. Nevertheless, this court finds Plaintiff's claim here to be without merit for the same reasons that his TILA claim failed: Plaintiff has made no claim that the descriptions of the amount of money that he owed to Person were in any way inaccurate representations of the amount of money that he paid to Person.

*Wachovia and the FTC Holder Rule*

██ The contract between Plaintiff and Person contained the following provision:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

This provision, the "FTC Holder Rule," is required by the Federal Trade Commission (FTC) for this RISC. *See* 16 C.F.R. § 433.2. There is no question that this provision protects consumers by preserving their claims and defenses against creditors and allowing non-payment in the face of a seller's fraudulent actions. Nevertheless, significant debate surrounds the question of when this provision can be used affirmatively against a creditor—as in this case—making the creditor liable for a seller's fraudulent actions.

District courts in this circuit have twice clearly limited the extent to which a consumer may use the FTC Holder Rule affirmatively against a creditor, and have never, as far as this court can tell, taken the position that a consumer is free to assert all claims against a creditor. In *Crews v. Altavista Motors, Inc.*, the court held that "a consumer may assert a claim against a creditor under the Holder Rule [only] when 'the seller's breach is so substantial that a court is persuaded rescission and restitution are justified.'" 65 F.Supp.2d 388, 391 (W.D.Va.1999) (quoting *Boggess v. Lewis Raines Motors, Inc.*, 20 F.Supp.2d 979, 982 (S.D.W.Va.1998)). Likewise, in *Irby–Greene v. M.O.R., Inc.*, the court found that "[i]n short, most courts have concluded that the primary purpose of the clause has generally been limited to the rare situation when the seller's breach renders the transaction practically worthless to the consumer." 79 F.Supp.2d 630, 635–36 (E.D.Va.2000) (citing *Crews*, 65 F.Supp.2d 388; *Mardis v. Ford Motor Credit Co.*, 642 So.2d 701, 703–04 (Ala. 1994)). Both courts point out that if the Plaintiff continues to enjoy the use of the vehicle, then sustaining an affirmative claim under the FTC Holder Rule may be difficult. *Irby–Greene*, 79 F.Supp.2d at 636 n. 22 (citing *Crews*, 65 F.Supp.2d at 391).

This court notes, as do other courts that find such a restriction on the affirmative claims available to consumers under the FTC Holder Rule, that the plain language of the clause allows a plaintiff to assert *any* cause of action against a creditor that it can assert against the seller, unlimited by the value of the transaction to the customer. Yet this court looks to FTC comments that suggest limits not set forth in the language of the clause. The FTC has concluded that the "affirmative" use of the clause is available in rare circumstances, namely, "where a seller's breach is so substantial that a court is persuaded

that rescission and restitution are justified." 40 Fed.Reg. 53524 (Nov. 18, 1975). *See also Irby–Greene*, 79 F.Supp.2d at 635; *Crews*, 65 F.Supp.2d at 391; *Boggess*, 20 F.Supp.2d at 982; *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759, 764–65 (N.D.Ill.1996); *Maberry v. Said*, 911 F.Supp. 1393, 1403 (D.Kan.1995). This court is persuaded by this language and the reasoning of courts who accordingly limit the affirmative use of the FTC Holder Rule.

This court further notes the existence of an FTC opinion letter that rejects limitation on the phrase "all claims" and sides with the analysis of *Oxford Finance Cos., Inc. v. Velez*, 807 S.W.2d 460 (Tex.App.—Austin 1991). Plaintiff claims to have attached this letter as Exhibit B to his memorandum opposing Defendants' Motion for summary judgment, but no such letter is attached as Exhibit B, or as any other exhibit as far as this court can tell. Nevertheless, this court has found a citation to and quote of this opinion letter in a case out of a Pennsylvania state court. *See Beemus v. Interstate Nat'l Dealer Servs.*, 2003 PA Super 177, P16, 823 A.2d 979 (2003). The letter states that "[i]f the Commissioner had meant to limit recovery to claims subject to 'rescission' or similar remedy, it would have said so in the text of the Rule and drafted the contractual provision accordingly." FTC Staff Opinion Letter, Sept. 25, 1999, at 2 (quoted in *Beemus*, 2003 PA Super 177, 823 A.2d 979). As noted by the Pennsylvania court, the letter does warn that "[t]he views set forth in this informal staff opinion letter are not binding on the Commission." *Id.*

This court is persuaded, along with the dissenting judge in *Beemus*, that to find the FTC Holder Rule available to consumers without the limitations found by courts such as *Morgan* and *Crews* is to make the creditor an absolute insurer or guarantor

of the seller's performance. *See Beemus,* 2003 PA Super 177, 823 A.2d 979, dissent P1 (Melvin, J. dissenting). This court finds such a liability to be contrary to the apparent purpose of the FTC Holder Rule. Along with the "number of courts [who] have adopted" the rationale of *Morgan,* this court finds that a plaintiff's affirmative claims against a creditor are limited. *Beemus,* 2003 PA Super 177, 823 A.2d 979, P9. Plaintiff has failed to demonstrate that a breach on the part of Person has rendered the truck practically worthless to him, or that rescission of the contract is appropriate. Therefore, summary judgment will be granted to Wachovia on all claims in this case.

*Motion to strike portions of Person's Evidence*

Plaintiff moves to strike portions of Person's evidence on the grounds that it contradicts sworn testimony. Mot. to Strike (docket no. 34). This court finds the alleged contradictions to be a matter of debate, depending on connotations and distinctions which are perhaps as stark as shades of gray. The contested evidence is the very evidence that the jury will be weighing when it decides questions of fact about the allegations of fraud in this claim. It would be inappropriate to strike such evidence at this juncture.

## IV. Conclusion

For the reasons discussed above, Plaintiff's motion for summary judgment (docket no. 26) is **DENIED**; Defendants' motion for summary judgment (docket no. 28) for Person is **GRANTED** as to Counts I and IV in their entirety. Defendants' motion for summary judgment for Person is also granted as to the tax issue in Counts II and III. Defendants' motion for summary judgment for Person is **DENIED** as to the remainder of Counts II and III; Defendants' motion for summary judgment for Wachovia is **GRANTED** as to Counts II,

III, and IV (Wachovia was not sued under Count I); and Plaintiff's motion to strike portions of Person's evidence is **DENIED**. Only Plaintiff's claims against Person for actual fraud and for violations of the UDTPA regarding representations about the damages to the truck remain intact for trial.